T.C. Memo. 2004-21

UNITED STATES TAX COURT

GARY AND JANET LUIZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6344-02.                    Filed January 29, 2004.

<u>Anthony V. Diosdi</u>, for petitioners.

<u>Patricia Montero</u> and <u>Margaret S. Rigg</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income tax of $47,116 for 1996 and $23,475
for 1997.[1]

---

[1]  Respondent also determined that petitioners are liable
for the addition to tax for late filing under sec. 6651(a)(1) for
1996.  Respondent now concedes that issue.
    Unless otherwise specified, section references are to the
Internal Revenue Code as amended.  Rule references are to the Tax
Court Rules of Practice and Procedure.  References to petitioner
are to Gary Luiz.

Petitioner, a shareholder in Green Valley Sawmills, Inc. (Green Valley), an S corporation, guaranteed to creditors of Green Valley that he would repay Green Valley's debts if Green Valley did not repay them. After concessions, the sole issue for decision is whether an amount equal to those guaranties is included in petitioner's basis in his Green Valley stock. We hold that petitioner's basis does not include the amount of those guaranties.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

### A. Petitioners

Petitioners are married and resided in Windsor, California, when they filed their petition in this case. Petitioner had been in the business of purchasing logs, timber land, and lumber for more than 25 years as of the time of trial.

### B. Green Valley Sawmills

In 1995, petitioner, Richard Priest, and Dean Rose formed Green Valley, an S corporation, to provide a livelihood for themselves. Petitioner contributed capital of about $27,000 to Green Valley when it was formed. Petitioner was president of Green Valley. Petitioner owned one-third of the stock of Green Valley in 1996 and 42.03 percent of the stock in 1997.

Green Valley bought logs from Hanes Ranch, Inc. (Hanes Ranch), Miller Trust, Charles Hyatt, Gregg Koppala, Koppala Cook,

Koppala Aalfs, and others. In 1996, Green Valley owed $130,395.80 to Hanes Ranch, $119,883.80 to Miller Trust, $77,378.15 to Koppala Cook, and $88,435.54 to Koppala Aalfs.

Northern California Log Scaling and Grading Bureau measured and graded logs delivered to Green Valley. Green Valley paid for logs based on those measurements and grades.

Petitioner orally guaranteed Green Valley's creditors, including Hanes Ranch, Miller Trust, Charles Hyatt, Koppala Cook, Koppala Aalfs, and Northern California Log Scaling and Grading Bureau, that he would pay Green Valley's debts if Green Valley did not. Those creditors expected petitioner to pay those debts if Green Valley did not.

Shuster's Transportation hauled logs for Green Valley during the winter of 1995-96. Marvin W. Lawrence was part owner of Shuster's Transportation. Green Valley owed about $17,000 to Shuster's Transportation for services Shuster's Transportation provided during that period.

Petitioner made no payments to any of Green Valley's creditors in 1996 or 1997. In 1998, petitioner issued a promissory note to Shuster's Transportation to pay Green Valley's debt. Petitioner paid Shuster's Transportation about $19,000 ($500 per month beginning in 1998) under the terms of that note.

C.   Petitioners' Income Tax Returns and Respondent's
     Determination

Petitioners filed Federal income tax returns for 1996 and 1997 and an amended return for 1996.  Petitioners deducted losses from Green Valley of $234,945 for 1996 and $193,920 for 1997.

Respondent determined that petitioner's basis in Green Valley stock was $23,965 in 1996 and $7,499 in 1997, and that petitioners' deduction of losses from Green Valley is limited to the amount of that basis.

## OPINION

A.   Background and Petitioners' Position

Petitioners contend that petitioner's basis in Green Valley stock includes amounts of Green Valley's debts he guaranteed.

A shareholder of an S corporation may deduct his or her pro rata share of the S corporation's losses, but the deduction may not exceed the sum of the shareholder's adjusted basis in his or her stock and the shareholder's adjusted basis in any indebtedness of the S corporation to the shareholder.  Sec. 1366(d)(1)(A) and (B).

A taxpayer using the cash method of accounting generally may not increase the basis in his or her S corporation stock in the amount of a guaranty until the taxpayer makes an actual economic outlay (i.e., a payment) under the guaranty.  Goatcher v. United States, 944 F.2d 747, 751 (10th Cir. 1991); Estate of Leavitt v. Commissioner, 875 F.2d 420, 422 (4th Cir. 1989), affg. 90 T.C.

206 (1988); <u>Spencer v. Commissioner</u>, 110 T.C. 62, 83-84 (1998), affd. without published opinion 194 F.3d 1324 (11th Cir. 1999); <u>Perry v. Commissioner</u>, 54 T.C. 1293, 1296 (1970), affd. 27 AFTR 2d 71-1464, 71-2 USTC par. 9502 (8th Cir. 1971); <u>Raynor v. Commissioner</u>, 50 T.C. 762, 770-771 (1968).

Petitioners bear the burden of proof.[2]  Rule 142(a)(1).

B.    <u>Whether Selfe v. United States Controls This Case</u>

Petitioners rely on <u>Selfe v. United States</u>, 778 F.2d 769, 772-774 (11th Cir. 1985), in which the U.S. Court of Appeals for the Eleventh Circuit held that, in certain circumstances, a shareholder's basis in S corporation stock includes the amount of the shareholder's guaranty of a loan to the S corporation, even though the shareholder has not satisfied any of the obligation. <u>Id.</u> at 774.

We have previously stated our disagreement with the reasoning in <u>Selfe v. United States</u>, <u>supra</u>.  <u>Estate of Leavitt v. Commissioner</u>, 90 T.C. 206, 216 (1988), affd. 875 F.2d 420 (4th Cir. 1989).  Even if we had not done so, we disagree with petitioner's contention that the circumstances in this case are similar to those in <u>Selfe</u>.

---

[2]  Petitioners do not contend that respondent bears the burden of proof under sec. 7491.  Taxpayers bear the burden of proving that the requirements under sec. 7491(a) are met.  H. Conf. Rept. 105-599, at 239 (1998), 1998-3 C.B. 747, 993; S. Rept. 105-174, at 45 (1998), 1998-3 C.B. 537, 581.

The taxpayer in <u>Selfe</u> borrowed funds in her individual capacity and pledged her personal assets as collateral. <u>Id.</u> at 770. She later formed an S corporation and advanced the borrowed funds to the corporation. <u>Id.</u> The taxpayer's loan was converted into a loan to the corporation. The corporation assumed the liability for repayment of the loan, and the taxpayer guaranteed repayment if the corporation did not repay. The taxpayer's personal assets continued to be collateral for the corporate liability. <u>Id.</u> at 771. The U.S. Court of Appeals for the Eleventh Circuit held that shareholder guaranties of subchapter S corporate indebtedness increase the shareholder's tax basis in his or her stock in the corporation where, in substance, the shareholder borrowed funds and advanced them to the corporation.[3] <u>Id.</u> Unlike <u>Selfe</u>, there is no evidence in this case that petitioner personally borrowed funds and then advanced those funds to Green Valley or that he pledged personal assets as collateral or that creditors of Green Valley looked primarily to him for repayment. We conclude that <u>Selfe v. United States</u>, <u>supra</u>, is distinguishable and does not control this case.[4]

---

[3] Because material facts in <u>Selfe v. United States</u>, 778 F.2d 769 (11th Cir. 1985), remained in dispute, the U.S. Court of Appeals for the Eleventh Circuit remanded the case to the trial court to evaluate whether the loan from the bank should be treated in reality as a loan to the taxpayer and then to the S corporation.

[4] Because <u>Selfe</u> does not control here, we need not decide

(continued...)

C.    <u>Whether Section 752(a) Applies</u>

Petitioners contend that, under section 752(a) and the regulations thereunder, petitioner's basis is increased by the amount of the Green Valley debt that he guaranteed.[5]  Petitioners acknowledge that Green Valley is an S corporation, and contend that section 752(a) applies because S corporations are similar to partnerships.  We disagree because section 752(a) applies to partnerships, not to S corporations.  See, e.g., <u>Smith v. Commissioner</u>, 84 T.C. 889, 909 (1985), affd. without published opinion 805 F.2d 1073 (D.C. Cir. 1986).

D.    <u>Whether Petitioner Made an Economic Outlay Before or During 1996-97</u>

Petitioners contend that petitioner made an economic outlay relating to Green Valley's debts before or during 1996-97.  We disagree for reasons stated next.

---

[4](...continued)
petitioners' contentions that <u>Selfe v. United States</u>, <u>supra</u>, is binding in cases appealable to the U.S. Court of Appeals for the Ninth Circuit or that public policy considerations require following <u>Selfe</u> in this Court.

[5]  Sec. 752(a) provides:

   SEC. 752. TREATMENT OF CERTAIN LIABILITIES.

      (a) Increase in Partner's Liabilities.--Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.

1.  <u>Whether Petitioner Is Deemed To Have Pledged Property</u>
    <u>as Collateral Based on Section 3054 of the California</u>
    <u>Civil Code</u>

Petitioners contend that petitioner's guaranty of Green Valley debt was an economic outlay under section 3054 of the California Civil Code (West 1993).  Section 3054 of the California Civil Code grants a lending institution a general lien on all property in its possession belonging to customers.[6] Petitioners contend that, under section 3054 of the California Civil Code, Green Valley's creditors could have filed a general lien on petitioner's personal property while petitioner's guaranties were in effect.  We disagree.  Section 3054 of the California Civil Code applies to banks and savings and loan associations.  None of Green Valley's creditors were banks or

---

[6] Sec. 3054 of the California Civil Code (West 1993) provides:

> SEC. 3054. BANKER'S OR SAVINGS AND LOAN ASSOCIATION'S LIEN; DEPOSIT ACCOUNTS.
>
> (a) A banker, or a savings and loan association, has a general lien, dependent on possession, upon all property in his or her hands belonging to a customer, for the balance due to the banker or savings and loan association from the customer in the course of the business.
>
> (b) The exercise of this lien with respect to deposit accounts shall be subject to the limitations and procedures set forth in Section 864 or 6660 of the Financial Code.

savings and loan associations.  Thus, section 3054 of the California Civil Code does not apply here.

2. <u>Whether Petitioner Is Deemed To Have Pledged Property as Security Based on Bloom v. Bender</u>

Petitioners contend that petitioner's guaranty of Green Valley debt was an economic outlay under <u>Bloom v. Bender</u>, 48 Cal. 2d 793 (1957).  Petitioners contend that, under <u>Bloom</u>, the obligation of a guarantor is presumed to be unconditional, and a guarantor is liable on the default of the primary obligor without notice or demand.  Petitioners contend that petitioner's guaranties amount to an unconditional obligation which effectively results in a general lien on petitioner's personal property.  Thus, petitioners contend that petitioner made an economic outlay to the extent that his personal property was unavailable as collateral for other investments.  Petitioners' reliance on <u>Bloom</u> is misplaced.

The plaintiff in <u>Bloom</u> sued the guarantor to enforce a written surety agreement after default by the principal debtor. The California Supreme Court held that the obligation of the guarantor is not barred by the running of the statute of limitations against the principal debtor or the discharge of the principal debtor in bankruptcy.  <u>Id.</u> at 798.  The California Supreme Court did not discuss or decide whether the guarantor pledged collateral or whether there was an economic outlay by the guarantor.  We conclude that <u>Bloom</u> does not apply here.

3.    Whether Petitioner's 1998 Promissory Note to Shuster's Transportation Was an Economic Outlay in 1996-97

Petitioners contend that petitioner may increase his basis in Green Valley for 1996-97 in the amount of the payments made on his 1998 note to Shuster's Transportation because he signed that note pursuant to his guaranty, which was in effect in 1996-97, and that this constituted an economic outlay in 1996-97. Petitioners contend that petitioner's basis includes the amount of the guaranty because petitioner's guaranty made him poorer in a material sense in 1996-97. Petitioners contend that petitioner could not responsibly sell or use his personal assets as collateral (other than for his guaranty to Green Valley's creditors) in those years, and that doing so would have violated his obligation under the guaranty. We disagree.

Petitioner did not make an economic outlay under the guaranty in 1996-97. A taxpayer/shareholder makes an economic outlay when he or she is left poorer in a material sense after the transaction. Estate of Bean v. Commissioner, 268 F.3d 553, 558 (8th Cir. 2001), affg. T.C. Memo. 2000-355; Bergman v. United States, 174 F.3d 928, 930 n.6 (8th Cir. 1999); Underwood v. Commissioner, 63 T.C. 468, 477 (1975), affd. 535 F.2d 309 (5th Cir. 1976); Perry v. Commissioner, 54 T.C. 1293, 1296 (1970); Horne v. Commissioner, 5 T.C. 250, 254 (1945). Petitioner's voluntary refusal, if any, to sell or use personal assets was not a pledge of those assets, nor did it constitute an expenditure of

funds or leave petitioner poorer in a material sense. Even if petitioner had pledged those assets as collateral for his guaranty, courts have held that pledging of personal assets is not an economic outlay sufficient to increase basis. See, e.g., Harris v. United States, 902 F.2d 439, 445 n.16 (5th Cir. 1990); Calcutt v. Commissioner, 84 T.C. 716, 719-720 (1985). Petitioners offer no authority for the proposition that petitioner's belief that he could not sell or use his personal assets as collateral in 1996-97 was an economic outlay for purposes of increasing his basis in Green Valley stock. We conclude that petitioner's self-imposed restriction did not increase his basis in Green Valley stock.

E.    Conclusion

We conclude that petitioner may not increase his basis in his Green Valley stock in 1996-97 by the amount of his guaranties to Green Valley creditors. Petitioner had insufficient basis in his stock and debt in Green Valley to allow him to deduct the losses claimed on petitioners' 1996-97 returns. We sustain

respondent's disallowance of losses from Green Valley in 1996-97.[7]

To reflect concessions and the foregoing,

<u>Decision will be entered under Rule 155</u>.

---

[7] Thus, we sustain respondent's determination that petitioner's basis in Green Valley was $23,965 for 1996 and $7,499 for 1997.