**FRAMATOME CONNECTORS USA, INC., Presently Known as Framatome Connectors USA Holdings Inc. and Subsidiaries, and Burndy Corporation, Presently Known as Framatome Connectors USA, Inc., Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

Docket Nos. 03–40119, 03–40121.

United States Court of Appeals, Second Circuit.

Sept. 7, 2004.

Mark A. Oates, Baker & McKenzie (Thomas V.M. Linguanti, Marc M. Levey, Erika S. Schechter, Gregory S. Lynam, Steven R. Dixon, of counsel), Chicago, IL, for Petitioners.

Stephen W. Parks, Tax Division, Department of Justice (Eileen J. O'Connor, Assistant Attorney General, Richard T. Morrison, Deputy Assistant Attorney General, David English Carmack, of counsel), Washington, DC, for Respondent.

PRESENT: SACK, SOTOMAYOR, and RAGGI, Circuit Judges.

## SUMMARY ORDER

The petitioners, referred to by the parties and in the opinion of the tax court as "Burndy–US," appeal from a judgment of the tax court concluding that Burndy–Japan, a Japanese corporation in which Burndy–US owned shares, was not a controlled foreign corporation ("CFC")[1] of Burndy–US in 1992. *Framatome Connectors US, Inc. v. Comm'r,* 118 T.C. 32, 2002 WL 58234 (2002) (*"Framatome"*). The unique and complex history of the creation and ownership of Burndy–Japan by Burndy–US, Sumitomo Electric Industries, Ltd., and Furukawa Electric Co., Ltd. (collectively, the "Shareholders"), and the relationship among the Shareholders are set forth in detail in *Framatome* and are discussed at great length in the trial transcript. We will not endeavor to rehearse them here.

In 1987, for the first time, and thereafter, Burndy–US designated Burndy–Japan as its CFC. This attempt to change the characterization of Burndy–Japan immediately followed, and was apparently occasioned by, changes in the United States

1. A CFC is defined in the United States Tax Code as:

   any foreign corporation if more than 50 percent of—
   (1) the total combined voting power of all classes of stock of such corporation entitled to vote, or
   (2) the total value of the stock of such corporation,
   is owned ... by United States shareholders on any day during the taxable year of such foreign corporation.
   26 U.S.C. § 957.

tax law that made it advantageous from a federal income tax standpoint for Burndy–Japan to be regarded as Burndy–US's CFC. There were no changes in Burndy–US's relationship with Burndy–Japan other than this designation.

The tax court determined that Burndy–US could not so alter its designation of Burndy–Japan because its purpose in doing so was tax avoidance, *Framatome*, 118 T.C. at 46–48, a conclusion that we need not and do not review here. The tax court also found that Burndy–US did not have more than fifty percent of the voting power or the stock value of Burndy–Japan. *Id.* at 48–64. On that ground, we affirm.

We review the tax court's factual determinations for clear error. *Follum v. Comm'r*, 128 F.3d 118, 119 (2d Cir.1997). If a factual determination "is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). By contrast, "[t]he tax court's rulings of law are reviewed de novo." *Follum*, 128 F.3d at 119. This includes review of issues of foreign law because, "pursuant to Fed.R.Civ.P. 44.1, a court's determination of foreign law is treated as a question of law, which is subject to de novo review." *Curley v. AMR Corp.*, 153 F.3d 5, 11 (2d Cir.1998).

At all relevant times, Burndy–US owned no more than fifty percent of the issued and outstanding shares of Burndy–Japan. On the face of it, then, Burndy–US did not own more than fifty percent of either the voting power or the value of Burndy–Japan stock that would render the company Burndy–US's CFC under section 957. Burndy–US argues, however, that under "all the facts and circumstances of [this] case," 26 C.F.R. § 1.957–1(b), especially with regard to powers that it could exercise under Burndy–US's articles of incorporation and a 1973 agreement among the

Shareholders, it did have such ownership. The tax court found otherwise.

In making its determination, the tax court depended primarily on factual findings regarding the supermajority and unanimous voting provisions, *Framatome*, 118 T.C. at 48–52, *cf. Alumax, Inc. v. Comm'r*, 165 F.3d 822, 825 (11th Cir.1999), Burndy–US's limited control-in-fact of Burndy–Japan's president and board of directors, *Framatome*, 118 T.C. at 52–55, the limits on Burndy–US's control over Burndy–Japan's affairs, *id.* at 55, the lack of a control premium paid by Burndy–US in 1973 for shares that raised its ownership stake to fifty percent, *id.* at 57–59, and Burndy–US's inability to extract disproportionate private benefits from Burndy–Japan, *id.* at 62–64. Based on our review of the extensive record in the tax court and the tax court's lengthy, detailed opinion, we conclude that none of these findings is clearly erroneous.

To be sure, in reaching its factual conclusions, the tax court relied to some extent on its own conclusions of Japanese law, *see* Pet. Br. at 41–47, such as whether, under Japanese law, Burndy–US had the power to nominate a fifth member of the Burndy–Japan board of directors, *Framatome*, 118 T.C. at 52; the law affecting tie-breaking powers with respect to corporate governance, *id.* at 52–54; and the power Burndy–US had to force Burndy–Japan to dissolve, *id.* at 56.

We agree with the tax court's conclusions with respect to Burndy–US's hypothetical power to nominate a fifth director. As explained by IRS witness Yoshimasa Furuta, the provisions of the basic agreement on which Burndy–US relies must be read consistently with the underlying arrangement under which each Shareholder maintained a position on the Board of Directors proportionate to its share owner-

ship. Indeed, counsel for Burndy–US opined that the Japanese Ministry of International Trade would "not permit Burndy to have a majority of the directors." Letter from John Christensen, McIvor, Kauffman & Christensen, Japanese counsel to Burndy–US, to George M. Szabad, Vice President, Counsel and Secretary of Burndy–US, January 19, 1973, at 2. We also agree that it is significant that Burndy–US never in fact sought to choose an additional, tie-breaking director.

We agree with the court, moreover, upon review of the testimony of Burndy–US's expert witness Hideki Kanda and IRS experts Michael Young and Furuta and authoritative articles, that Burndy–US directors were unable to cast a tie-breaking vote under Japanese law. Again we find significance in the fact that Burndy–US apparently never attempted to do so.

Finally, we note that the provision of Japanese law invoked by Burndy–US that "a shareholder owning 10% or more of the shares 'may demand that the court dissolve [a] stock company,'" Pet. Br. at 41 (citing Japanese Commercial Code § 406–2(1)), is immaterial to the issues before us.[2]

In any event, we do not think that the issues of Japanese law that Burndy–US raises have a substantial impact on the tax court's conclusion of fact that Burndy–US in substance owned no more than fifty percent of the voting power or value of Burndy–Japan's stock. We reach this conclusion in part because the value to Burndy–US of its unexercised tie-breaking power, if indeed as a matter of Japanese law it had such power, seems to us to be marginal. It is easily outweighed by the supermajority and unanimous voting provisions and other factors found by the tax court, in a finding not clearly erroneous, to decrease Burndy–US's voting power and ownership in stock value in Burndy–Japan. We ultimately conclude, then, that there are insufficient grounds upon which to conclude that the tax court's finding that, under all the facts and circumstances, Burndy–Japan was not a CFC of Burndy–US was clearly erroneous.

The judgment of the tax court is therefore hereby AFFIRMED.

2. 26 C.F.R. § 1.957–1(b)(ii) provides that, facts and circumstances aside, a foreign corporation is a CFC of a United States shareholder "[i]f any person or persons elected or designated by such shareholders have the power, where such shareholders have the power to elect exactly one-half of the members of such governing body of such foreign corporation, either to cast a vote deciding an evenly divided vote of such body or, for the duration of any deadlock which may arise, to exercise the powers ordinarily exercised by such governing body." As far as we can tell, Burndy–US did not raise this specific argument before us until it filed its reply brief. Until then, it seemed to argue only that the power to cast a deciding vote was one of the "facts and circumstances" that supported its conclusion that Burndy–Japan was its CFC. "Arguments may not be made for the first time in a reply brief." *Riverkeeper, Inc. v. Collins*, 359 F.3d 156, 166 n. 11 (2d Cir.2004) (citations and internal quotation marks omitted). We have nonetheless reviewed the assertion and, for the reason adverted to in the text, agree with the conclusion of the tax court that the tie-breaking provision was not permitted under Japanese law.