T.C. Memo. 2005-75


UNITED STATES TAX COURT


WILLIAM H. MALOOF, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 15211-02, 17951-03.    Filed April 6, 2005.


<u>Donald J. O'Connor</u>, for petitioner.

<u>Anita A. Gill</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income tax by disallowing operating losses sustained by an S corporation in which petitioner was the sole shareholder.  After concessions, the sole issue before the Court is whether petitioner is entitled to increase his adjusted basis in the S corporation by $4 million, the amount of a loan a third

party made to the S corporation.  Resolving this issue depends on whether petitioner made an economic outlay regarding this loan to allow petitioner to increase his basis in the S corporation.  We hold that he did not.

### FINDINGS OF FACT

The parties have stipulated some facts.  The stipulation of facts and the accompanying exhibits are incorporated by this reference and are so found.

Petitioner is the sole shareholder of several S corporations involved in the propane gas industry.  One S corporation, Level Propane, Petroleum & Gases Co., an Ohio corporation (Level Propane),[1] generated the losses petitioner claimed as passthrough deductions in this case.  Level Propane provided propane gas to rural areas in Ohio initially, then expanded into neighboring States.  At its peak, Level Propane provided propane gas and services to customers in 14 States and had about 600 employees who generated approximately $18 million in annual revenues.

Level Propane required increasingly large infusions of capital to sustain its growth.  Level Propane's capital needs were funded initially with transfers from various S corporations in which petitioner owned all the shares.  Eventually Level Propane obtained financing from commercial lenders.  The specific

---

[1]Neptune Propane, Inc., merged into Level Propane during 1993.  Throughout this opinion references to Level Propane will include Neptune to the extent relevant.

loan involved here is a $4 million loan[2] from Provident Bank (the bank) pursuant to a loan agreement dated July 29, 1993.

The $4 million loan consisted of three principal components, each collateralized differently. First, there was a $750,000 equipment note that was secured by equipment Level Propane would purchase with the loan proceeds. Second, there was a $2.5 million revolving term loan that was secured by petroleum tanks and supply contracts Level Propane owned. Third, there was a $750,000 demand loan that was secured by the inventory and accounts receivable of Level Propane. As additional collateral for the $4 million loan to Level Propane, petitioner pledged all the shares he owned of Level Propane and a $1 million life insurance policy on his life.

Level Propane made monthly interest payments on the $4 million loan through an account that Level Propane was required to maintain with the bank. Petitioner made no payments on the loan.

Level Propane defaulted on the loan and was forced into involuntary bankruptcy. At no time did the bank demand payment from petitioner individually or begin collection action against petitioner regarding the $4 million loan to Level Propane.

---

[2]During his testimony, petitioner briefly referred to approximately $60 million in loans. Petitioner failed to introduce any evidence, however, to document any loans other than the $4 million loan from Provident Bank.

Level Propane generated substantial losses[3] during the years at issue. Petitioner increased his basis in the stock of Level Propane by the amount of the $4 million loan to claim as passthrough deductions the net operating losses of Level Propane. Respondent determined that petitioner's basis in the stock of Level Propane did not increase by the amount of the $4 million loan to Level Propane because petitioner had never paid nor had he ever been called upon to pay any amount under the $4 million loan. Respondent consequently found that petitioner had insufficient basis against which to deduct any losses. Respondent mailed to petitioner notices of deficiency on June 28, 2002, and July 16, 2003, determining the following deficiencies:

| Year | Deficiency |
| --- | --- |
| 1990 | [1]$169,270 |
| 1991 | 77,709 |
| 1992 | 47,733 |
| 1993 | 351,162 |
| 1995 | 305,162 |
| 1996 | 1,939,205 |
| 1998 | 31,397 |
| 1999 | 50,870 |
| 2000 | 197,365 |

[1]All dollar amounts are rounded to the nearest dollar.

Petitioner timely filed a petition contesting respondent's determination, arguing that his basis was increased by the amount

---

[3]Level Propane and Neptune Propane reported losses of $2,341,173 in 1993. Most of petitioner's increased basis, consequently, would have been depleted in 1993. The deficiencies respondent determined for 1995, 1996, 1998, 1999, and 2000, therefore, would be sustained even if petitioner was allowed the $4 million basis increase.

of the $4 million loan. We must therefore determine whether petitioner may increase his basis in the S corporation by the amount of the $4 million loan so petitioner may deduct passthrough operating losses of the S corporation.

## OPINION

Petitioner and respondent differ on the effect of the $4 million loan the bank made to Level Propane. Petitioner argues that he is entitled to increase his basis in the stock of Level Propane by the amount of the loan for three reasons. First, petitioner argues that he is entitled to an increase in basis in Level Propane because he personally guaranteed the loan. Second, petitioner argues that he is entitled to increase his basis in Level Propane because he pledged stock to secure the loan. Regarding this second argument, petitioner implies that Eleventh Circuit precedent compels a different result from our own caselaw. Third, petitioner argues that he is entitled to increase his basis in Level Propane because he incurred a cost when he lost "control" of Level Propane.

Respondent counters that neither petitioner's guaranty, the pledged stock, nor the bank's "control" over Level Propane constituted an economic outlay. Respondent also argues that Eleventh Circuit caselaw does not compel a different result.

We address the parties' contentions in turn. First, we state the general rules governing when a shareholder of an S

corporation is entitled to deduct losses the S corporation sustained. Petitioner bears the burden of proof.[4]

When an S corporation incurs losses, the shareholders of the S corporation, unlike shareholders of a C corporation, can directly deduct their share of the entity level losses in accordance with the flowthrough rules of subchapter S. Section 1366(a)[5] provides for the pro rata flowthrough of subchapter S corporation income, losses, and deductions to the shareholders. Section 1366(d)(1), however, limits the aggregate amount of flowthrough losses and deductions a shareholder may claim.

The losses cannot exceed the sum of the shareholder's adjusted basis in his or her stock and the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder. Sec. 1366(d)(1)(A) and (B). This restriction

---

[4]The Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving he or she is entitled to any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra. This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). The burden of proof may shift to the Commissioner in certain situations if the taxpayer complies with substantiation requirements and cooperates with reasonable requests of the Commissioner. Sec. 7491(a)(2). Because petitioner failed to show he satisfied these requirements, the burden of proof remains with petitioner.

[5]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

applies because the disallowed amount exceeds the shareholder's economic investment in the S corporation and, because of the limited liability accorded to S corporation shareholders, the amount does not have to be repaid. The disallowed losses and deductions may be carried forward indefinitely, however, and claimed when and to the extent that the shareholder increases his or her basis in the S corporation.[6] See sec. 1366(d)(2).

Economic Outlay

A taxpayer must make an economic outlay for a loan to create basis. A taxpayer makes an economic outlay when he or she incurs a "cost"[7] on a third-party loan or is left poorer in a material sense after the transaction. Putnam v. Commissioner, 352 U.S. 82 (1956); Estate of Bean v. Commissioner, 268 F.3d 553, 558 (8th Cir. 2001), affg. T.C. Memo. 2000-355; Bergman v. United States, 174 F.3d 928, 930 n.6 (8th Cir. 1999); Estate of Leavitt v. Commissioner, 875 F.2d 420, 422 (4th Cir. 1989), affg. 90 T.C. 206 (1988); Brown v. Commissioner, 706 F.2d 755, 756 (6th Cir. 1983), affg. T.C. Memo. 1981-608; Spencer v. Commissioner, 110 T.C. 62, 83-84 (1998), affd. without published opinion 194 F.3d

---

[6]Shareholders may increase basis in an S corporation by capital contributions, stock purchases, or extensions of additional credit, or where the S corporation generates taxable income.

[7]Basis of property is the "cost" of the property. Sec. 1012. "Cost" is defined as the "amount paid" for property "in cash or other property." Sec. 1.1012-1(a), Income Tax Regs.

1324 (11th Cir. 1999); Underwood v. Commissioner, 63 T.C. 468, 477 (1975), affd. 535 F.2d 309 (5th Cir. 1976); Prashker v. Commissioner, 59 T.C. 172 (1972); Perry v. Commissioner, 54 T.C. 1293, 1296 (1970), affd. 392 F.2d 458 (8th Cir. 1971); Raynor v. Commissioner, 50 T.C. 762, 770-771 (1968); Horne v. Commissioner, 5 T.C. 250, 254 (1945).

Against this background, we now address whether petitioner may increase his basis in the S corporation by the amount of the loan. We address specifically petitioner's contention that his personal loan guaranty, the pledge of stock, and the bank's "control" of Level Propane, either singly or collectively, constitute an economic outlay.

Personal Guaranty

Shareholder guaranties of loans to an S corporation do not constitute an economic outlay. Estate of Leavitt v. Commissioner, supra; Brown v. Commissioner, supra; Spencer v. Commissioner, supra; Calcutt v. Commissioner, 84 T.C. 716, 719-720 (1985); Perry v. Commissioner, supra; Raynor v. Commissioner, supra; Hafiz v. Commissioner, T.C. Memo. 1998-104. But see Selfe v. United States, 778 F.2d 769, 773 n.7 (11th Cir. 1985). Guaranteeing a bank loan does not constitute an economic outlay because the shareholder is only secondarily liable. See Putnam v. Commissioner, supra at 85. A shareholder must perform under

the guaranty to increase basis in the S corporation.[8]  Perry v. Commissioner, 392 F.2d 458 (8th Cir. 1968) (corporate debts guaranteed by the shareholder were not debt whose basis is taken into account for loss passthrough purposes).  But see Selfe v. United States, supra (sole shareholder may get a basis increase in stock if the loan was in fact made to him or her and borrowed funds were re-lent to corporation).  Cf. Estate of Leavitt v. Commissioner, 90 T.C. 206 (1988) (no basis increase for shareholder-guaranteed loan to corporation; majority refused to apply debt-equity principles to S corporation's guaranteed loan, rejecting Selfe).

The shareholder in an S corporation therefore, generally, may not increase his or her basis in the S corporation by simply guaranteeing the debt of an S corporation.  Because petitioner was not called upon to perform under the loan or make any payment, we hold that his personal guaranty did not increase his basis in Level Propane.

Pledged Collateral

We next address whether petitioner's pledge of stock of an S corporation to secure the loan the bank made to the S corporation constitutes an economic outlay.  We address, first, our caselaw,

---

[8]By contrast, a limited partner who guarantees a nonrecourse partnership debt may be allowed to increase basis.

and, second, petitioner's argument that the precedent in the Eleventh Circuit compels a different result.[9]

Courts have indicated that pledging personal assets is not an economic outlay sufficient to increase basis. See Harris v. United States, 902 F.2d 439, 445 n.16 (5th Cir. 1990); see also Calcutt v. Commissioner, supra at 719-720; Luiz v. Commissioner, T.C. Memo. 2004-21. But see Selfe v. United States, supra at 773 n.7. Moreover, petitioner has offered no authority, other than an ambiguous invocation of Eleventh Circuit precedent, that pledging stock might constitute an economic outlay.[10] Perhaps petitioner is relying on Selfe, though he failed to cite the case at trial or in brief. This Court has previously disagreed with the analysis in Selfe. Estate of Leavitt v. Commissioner, 90 T.C. 206 (1988). Nonetheless, we find the facts in Selfe

--------

[9]Presumably finding Eleventh Circuit precedent more favorable to his position, petitioner claims he resided, at the time he filed the petition, with his mother in Florida, which is in the Eleventh Circuit, rather than with his wife in Ohio, which is in the Sixth Circuit. See sec. 7482. Without deciding whether petitioner resided in the Eleventh Circuit, we focus on whether caselaw in the Eleventh Circuit would characterize petitioner's pledge of stock as an economic outlay that would increase his basis in the S corporation.

[10]A footnote states that a guarantor who has pledged stock to secure a loan "has experienced an economic outlay" to the extent that the pledged stock is not available as collateral for other investments, because the guarantor has lost the time value or use of his or her collateral. Selfe v. United States, 778 F.2d 769, 773 n.7 (11th Cir. 1985). Although petitioner failed to bring this footnote to our attention, we read it in the context of the facts in Selfe, which we distinguish.

distinguishable from the facts before us, and, hence, that case is not controlling.

We first note that the court in <u>Selfe</u> reaffirmed the principle that "an economic outlay is required" before a shareholder in an S corporation may increase his or her basis. <u>Selfe v. United States</u>, <u>supra</u> at 772. <u>Selfe</u> holds, however, that a shareholder does not, in all circumstances, have to "absolve" a corporation's debt to increase basis. <u>Id.</u> (citing <u>Brown v. Commissioner</u>, 706 F.2d 755 (6th Cir. 1983)). <u>Selfe</u> does not compel a different conclusion, notwithstanding its holding, because our facts are distinguishable.

In <u>Selfe</u>, the taxpayer borrowed funds in her individual capacity, then pledged her personal assets as collateral for a loan. <u>Id.</u> at 770. The taxpayer later formed an S corporation and advanced the borrowed funds to the S corporation. <u>Id.</u> The taxpayer's loan was, at that point, converted into a loan to the corporation. The corporation assumed the liability to repay the loan, and the taxpayer guaranteed repayment if the corporation did not repay. The taxpayer's personal assets continued to be collateral for the corporate liability. <u>Id.</u> at 771.

Petitioner has offered no evidence that he personally borrowed funds from the bank and then advanced those funds to Level Propane, or that the bank looked primarily to him for repayment. In contrast, a bank employee in <u>Selfe</u> testified that

the bank looked to the taxpayer as primary obligor.  Id. at 774.
Petitioner has offered no analogous testimony, and we can infer
the testimony would have been adverse to petitioner.  See Wichita
Terminal Elevator Co. v. Commissioner, 162 F.2d 513, 515 (10th
Cir. 1947), affg. 6 T.C. 1158 (1946).

The facts in our case indicate the bank looked primarily to
the S corporation for repayment, not petitioner.[11]  In Spencer v.
Commissioner, 110 T.C. at 85-86, where appeal lay to the Court of
Appeals for the Eleventh Circuit, Selfe was distinguished because
this Court was not persuaded the bank looked primarily to the
taxpayer for repayment, even though the taxpayer had pledged
personal assets as collateral.  Similarly, the collateral on
which the bank depended in this case belonged to the corporate
debtor, not petitioner.  Until the bank calls upon petitioner
individually to make some payment on the loan, petitioner has
experienced no economic outlay and may not increase his basis in
the S corporation.  Because petitioner has offered no evidence
that the bank looked primarily to him for repayment, we conclude
that Selfe is distinguishable and, therefore, does not control
this case.  See Metzger Trust v. Commissioner, 76 T.C. 42, 72-74
(1981) (factual distinctions render decision of Court of Appeals

---

[11]Petitioner would garner a basis increase if, for example,
his pledged shares in the S corporation were foreclosed by the
bank and their value were applied toward the balance of the loan.
If that were to occur, petitioner would have incurred a cost and,
consequently, made an economic outlay.

not squarely on point and <u>Golsen</u> rule inapplicable), affd. 693 F.2d 459 (5th Cir. 1982); <u>Golsen v. Commissioner</u>, 54 T.C. 742, 756-757 (1970) (the <u>Golsen</u> rule requires the Court to follow a Court of Appeals decision that is squarely on point if appeal from its decision lies to that Court of Appeals), affd. 445 F.2d 985 (10th Cir. 1971).

<u>Loss of Control</u>

Petitioner makes a third argument for increasing his basis by the amount of the $4 million loan.  Petitioner argues that he lost "control" of Level Propane and was therefore entitled to a basis increase by the amount of the cost he associated with losing control of the S corporation.  Petitioner has not substantiated, however, any alleged loss of control.  Nor has petitioner provided us with a means to value the loss of control. Even had petitioner substantiated some transitory loss of control, no basis-increasing event occurred.  Petitioner remained at all times the owner of his shares.  We conclude that petitioner has failed to show any economic outlay for his alleged loss of control.

<u>Form of the Transaction</u>

Finally, we address petitioner's argument that we recharacterize the form of the loan transaction as a loan to himself that he then advanced to Level Propane.  Taxpayers are ordinarily bound by the "form" of their transaction and may not

argue that the "substance" of their transaction triggers different tax consequences.  See Don E. Williams Co. v. Commissioner, 429 U.S. 569, 579 (1977); Commissioner v. Natl. Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974) (a taxpayer must accept the tax consequences of his or her choice and may not enjoy the benefit of some other route he or she might have chosen to follow but did not); Selfe v. United States, 778 F.2d at 773; Brown v. Commissioner, supra; Framatome Connectors USA, Inc. v. Commissioner, 118 T.C. 32, 47 (2002), affd. 108 Fed. Appx. 683 (2d Cir. 2004).

Petitioner was free to organize his affairs as he saw fit. Once having done so, however, he must accept the tax consequences of his choice and may not enjoy the benefit of some other transaction.  See Commissioner v. Natl. Alfalfa Dehydrating & Milling Co., supra at 149.  We therefore decline to adopt petitioner's view of the transaction.  The bank lent the funds to the S corporation, not to petitioner, and the loan proceeds were used to fund operations of the S corporation.

Conclusion

We conclude that petitioner may not increase his basis in the stock of Level Propane by the amount of the $4 million loan the bank made to Level Propane.  Petitioner therefore had insufficient basis in the stock of Level Propane to deduct

passthrough losses from Level Propane.  Accordingly, we sustain respondent's disallowance of those deductions during the years at issue.

<u>Decisions will be entered</u>

<u>for respondent</u>.