T.C. Memo. 2012-303

UNITED STATES TAX COURT

LAUREN A. HOWELL AND MICHAEL H. HOWELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5903-10.                            Filed November 1, 2012.

Lauren A. Howell and Michael H. Howell, pro sese.

<u>Alexander D. DeVitis</u> and <u>Carolyn A. Schenck</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent mailed to petitioners a notice of deficiency

dated December 1, 2009, in which respondent determined the following deficiencies

and additions to tax with respect to petitioners' Federal income tax:

[*2]

| Year | Deficiency | Additions to tax | | |
|---|---|---|---|---|
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2000 | $17,799 | $4,005 | $4,450 | $957 |
| 2001 | 35,385 | 6,612 | 7,346 | 790 |

After concessions,[1] the sole issue for decision is whether petitioners are liable for self-employment tax under section 1401[2] on payments made to Lauren A. Howell by Intelemed, LLC, in 2000 and 2001, which Intelemed deducted as guaranteed payments on its 2000 and 2001 Forms 1065, U.S. Return of Partnership Income.

---

[1]In their petition, petitioners assign error only to respondent's determination that they are liable for self-employment tax with respect to payments received from Intelemed during the years at issue. Petitioners, however, also allege in their petition that respondent failed to apply a $6,000 advance payment that they made toward their 2001 deficiency.

We deem any issue not raised in the assignments of error in the petition conceded. See Rule 34(b)(4). Accordingly, we conclude that petitioners have conceded their liability with respect to the secs. 6651(a)(1) and (2) and 6654 additions to tax. Respondent concedes that petitioners have made a $6,000 advance payment toward their 2001 deficiency. The treatment of the advance payment and any resulting adjustments with respect to the secs. 6651(a)(1) and (2) and 6654 additions to tax will be addressed in the Rule 155 computation.

[2]Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]                              FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts is incorporated herein by this reference.  Petitioners resided in California when they filed their petition.

Michael H. Howell is an engineer who, for the last 20 years, has worked in information technology infrastructure.  Mrs. Howell does not have any background in computer technology.

Background

In September 1999 petitioners and Harold Bruzee formed a California limited liability company named Intelemed.  Intelemed is a medical technology company that provides software and hardware to hospitals.  The software consists of a remote access system that enables doctors to access hospital records from outside the hospital.

Mr. Howell and Mr. Bruzee came up with the concept that led to the formation of Intelemed.  Like Mr. Howell, Mr. Bruzee had a background in computer networking.  Mr. Bruzee also had the connection with the hospital to make Intelemed a success.

When Intelemed was first organized, Mr. Howell decided to make Mrs. Howell a member of Intelemed rather than himself, ostensibly because she had

[*4] better credit and petitioners intended to use her credit and credit card to secure loans for Intelemed and/or to purchase items for the business. Consistent with that decision, the limited liability company operating agreement for Intelemed provided that Intelemed's members were Mrs. Howell and Mr. Bruzee; Mrs. Howell held 60% of the membership units and Mr. Bruzee held 40%. Under the operating agreement Mrs. Howell was the record owner of a 60% capital interest and could dissolve Intelemed at any time and appoint the manager of Intelemed. Mrs. Howell was entitled to receive an allocation of net profits or losses in proportion to her capital interest. The operating agreement provided that "[t]he liability of the Members shall be limited as provided under the laws of the California Limited Liability statutes."

On October 1, 1999, Mr. Howell and Intelemed entered into an agreement under which Mr. Howell would provide management services to Intelemed (management agreement). Mrs. Howell signed the management agreement on behalf of Intelemed. Under the management agreement Intelemed delegated to Mr. Howell "the total and exclusive control of all management and operations" of Intelemed.

During the years at issue Intelemed's principal place of business was at petitioners' personal residence. Mr. Howell met with clients, set up service

**[*5]** agreements, and handled marketing. Mrs. Howell signed Intelemed documents and discussed marketing strategies with Mr. Howell. She also allowed Mr. Howell to use her personal credit card to make purchases on behalf of Intelemed.

Intelemed's Tax Reporting

Intelemed is a limited liability company treated as a partnership for Federal income tax purposes. Intelemed filed Forms 1065 for 2000 and 2001.

On its 2000 Form 1065 Intelemed reported gross receipts of $302,456, a gross profit of $250,259, and ordinary income of $12,355. In calculating its ordinary income, Intelemed deducted guaranteed payments to partners of $165,525. On attached Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., Intelemed reported that the percentages of ownership, ordinary income, and guaranteed payments were allocated to the partners as follows:

| Partner | Percentage of ownership | Ordinary income | Guaranteed payments |
|---|---|---|---|
| Michael Howell | 21 | $2,595 | $34,861 |
| Lauren Howell | 39 | 4,757 | 63,850 |
| Harold Bruzee | 35 | 4,262 | 57,214 |
| Kevin Roberts[1] | 6 | 741 | 9,600 |

[1]There is no evidence in the record with regard to Mr. Roberts other than the Schedules K-1 Intelemed filed.

[*6] Intelemed also reported on its 2000 Form 1065 that Mr. Howell was its tax matters partner (TMP).[3]

On its 2001 Form 1065 Intelemed reported gross receipts of $379,146, gross profit of $342,865, and ordinary income of $18,794. In calculating its ordinary income, Intelemed deducted guaranteed payments to partners of $259,500. On attached Schedules K-1 Intelemed reported that the percentages of ownership, ordinary income, and guaranteed payments were allocated to the partners as follows:[4]

| Partner | Percentage of ownership | Ordinary income | Guaranteed payments |
| --- | --- | --- | --- |
| Lauren Howell | 57 | $10,713 | $149,500 |
| Kevin Roberts | 12 | 2,255 | 30,000 |
| Harold Bruzee | 31 | 5,826 | 80,000 |

---

[3]The unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, sec. 402, 96 Stat. at 648, do not apply to Intelemed. Intelemed qualifies as a small partnership under sec. 6231(a)(1)(B)(i) and did not elect, pursuant to sec. 6231(a)(1)(B)(ii), to have TEFRA apply. See Wadsworth v. Commissioner, T.C. Memo. 2007-46 (holding that the designation of a TMP on the partnership return, coupled with the absence of any election statement, is not an election to be subject to TEFRA). The small partnership exception allows this Court "to review in a deficiency suit items that otherwise would be subject to partnership-level proceedings." Id., slip op. at 6; see also New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 173 n.3 (2009), aff'd, 408 Fed. Appx. 908 (6th Cir. 2010).

[4]The record does not contain any evidence explaining why the percentage of ownership varied from 2000 to 2001.

[*7] Intelemed also reported on its 2001 Form 1065 that Mrs. Howell was its TMP.

Respondent's Examination and the Notice of Deficiency

During 2005 respondent began an examination for Intelemed's 2003-05 taxable years. Respondent's examination eventually expanded to include an examination for petitioners' 2000-2001 taxable years.[5] Petitioners had failed to file timely returns for those years. Respondent proposed adjustments with respect to petitioners' 2000-2001 taxable years, which petitioners protested to respondent's Appeals Office.

While the Appeals Office review was pending, petitioners submitted to respondent copies of delinquent joint Forms 1040, U.S. Individual Income Tax Return, for 2000 and 2001. On their 2000 Form 1040 petitioners reported taxable income of $41,968. On an attached Schedule C, Profit or Loss From Business, Mr. Howell reported a net profit of $25,875 from his consulting business.[6] Petitioners also attached a Schedule SE, Self-Employment Tax, for Mr. Howell.

---

[5]Respondent's examination also expanded to include examination for petitioners' 2003-05 taxable years. In response to respondent's determinations with respect to those years, petitioners filed a petition with the Court at docket No. 23779-08. The parties settled that case in October 2009.

[6]On his 2000 Schedule C Mr. Howell reported gross receipts of $37,456. This amount is the sum of the guaranteed payment of $34,861 and ordinary income of $2,595 he received from Intelemed.

[*8] On the Schedule SE they reported that Mr. Howell had net earnings from self-employment of $23,896.[7]  On an attached Schedule E, Supplemental Income and Loss, petitioners reported that they received partnership distributions of $68,607 from Intelemed.

On their 2001 Form 1040 petitioners reported taxable income of $106,606. On an attached Schedule C Mr. Howell reported a net profit of $1,375 from his business "What-If".  On an attached Schedule SE petitioners reported that Mr. Howell had net earnings from self-employment of $1,270.[8]  On an attached Schedule E petitioners reported that they received partnership distributions of $160,213 from Intelemed.

On December 1, 2009, respondent issued to petitioners a notice of deficiency for 2000-01.  Respondent determined that Mrs. Howell received from Intelemed guaranteed payments of $63,850 and $149,500 for 2000 and 2001, respectively, and ordinary income of $4,757 and $10,713 for 2000 and 2001, respectively.  For 2000 respondent determined that Mr. and Mrs. Howell received self-employment income of $25,875 and $63,850, respectively.  For 2001

[7]To calculate net earnings from self-employment, petitioners multiplied Mr. Howell's net profit by 92.35%, as directed by the Schedule SE.

[8]To calculate net earnings from self-employment, petitioners multiplied Mr. Howell's net profit by 92.35%, as directed by the Schedule SE.

**[*9]** respondent determined that Mr. and Mrs. Howell received self-employment income of $1,679 and $149,500, respectively.

OPINION

Introduction

A taxpayer's self-employment income is subject to self-employment tax. Sec. 1401(a) and (b). Self-employment tax is assessed and collected as part of the income tax, must be included in computing any income tax deficiency or overpayment for the applicable tax period, and must be taken into account for estimated tax purposes. Sec. 1401; see also sec. 1.1401-1(a), Income Tax Regs. Self-employment income generally is defined as "the net earnings from self-employment derived by an individual". Sec. 1402(b). Section 1402(a) defines "[n]et earnings from self-employment" as follows:

> SEC. 1402(a). Net Earnings From Self-Employment.--The term 'net earnings from self-employment' means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss described in section 702(a)(8) from any trade or business carried on by a partnership of which he is a member * * *

See also sec. 1.1402(a)-1, Income Tax Regs. Section 702(a)(8) provides that, in determining a partner's income tax, "each partner shall take into account separately his distributive share of the partnership's * * * taxable income or loss,

**[*10]** exclusive of items requiring separate computation under other paragraphs" of section 702(a).

While a partner generally must include his distributive share of income in his net earnings from self-employment, section 1402(a)(13) provides that in certain circumstances, a limited partner may exclude his distributive share of income from net earnings from self-employment.  Under section 1402(a)(13),

> [T]here shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c)[9] to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services;

Section 1402(a)(13) does not define the term "limited partner".  In <u>Renkemeyer, Campbell & Weaver, LLP v. Commissioner</u>, 136 T.C. 137, 149-150 (2011), we applied accepted principles of statutory construction to decide whether the taxpayers' partnership interests in a law firm should be considered limited partner interests for purposes of section 1402(a)(13), stating as follows:

> The insight provided reveals that the intent of section 1402(a)(13) was to ensure that individuals who merely invested in a partnership and who were not actively participating in the partnership's business operations * * * would not receive credits toward Social Security

---

[9]Sec. 707(c) provides that guaranteed payments are payments received by a partner from a partnership that are calculated without regard to the partnership's income.

**[*11]** coverage.  The legislative history of section 1402(a)(13) does not support a holding that Congress contemplated excluding partners who performed services for a partnership in their capacity as partners (i.e., acting in the manner of self-employed persons), from liability for self-employment taxes.

This Court held that the taxpayers were not limited partners for purposes of section 1402(a)(13) because the distributive shares received "arose from legal services * * * [the taxpayers] performed on behalf of the law firm" and "did not arise as a return on the partners' investment".  Id. at 150.

Parties' Arguments

Petitioners, who owned a majority interest in Intelemed and controlled it, classified and reported certain payments made to Mrs. Howell and Mr. Bruzee as guaranteed payments on Intelemed's returns.  Respondent contends that, in so doing, petitioners admitted that the payments were guaranteed payments and may not thereafter disavow their reporting position without demonstrating that they are entitled to do so under cases such as Norwest Corp. v. Commissioner, 111 T.C. 105, 144 (1998), and Pinson v. Commissioner, T.C. Memo. 2000-208, slip op. at 26-27.[10]  See infra pp. 13-14.  Respondent also contends that Mrs. Howell was not

---

[10]In his brief respondent contends that petitioners should not be permitted to disavow the form of the transaction as adopted on Intelemed's 2000 and 2001 returns.  Respondent appears to contend that if we accept this argument, Mrs. Howell is liable for self-employment tax on the payments she received from

(continued...)

[*12] a true member of Intelemed but was merely a nominee[11] for Mr. Howell and, therefore, the payments must be included in his net earnings from self-employment. Alternatively, respondent contends that Mrs. Howell was an active participant in Intelemed, and consequently, she may not exclude the payments from her net earnings from self-employment under section 1402(a)(13).

Petitioners contend that Mrs. Howell is a limited partner of Intelemed and that therefore her distributive share of income from Intelemed is excluded from her net earnings from self-employment. Petitioners also appear to contend that Mrs. Howell was not actively engaged in the business and imply that she did not receive the payments as remuneration for services she rendered to Intelemed.

---

[10](...continued)
Intelemed. Under sec. 1402(a)(13), a limited partner is liable for self-employment tax only on guaranteed payments for services actually rendered to or on behalf of the partnership. Accordingly, even if we accept respondent's argument that petitioners may not disavow the form adopted on Intelemed's returns, petitioners could still argue that Mrs. Howell did not receive the payments as remuneration for services she actually rendered to or on behalf of Intelemed. We construe petitioners' argument to include a contention that Mrs. Howell did not receive the payments as remuneration for services she rendered to Intelemed, but rather as a distribution made to her in her capacity as a limited partner. Petitioners have the burden of proof on this inherently factual issue. See Rule 142(a).

[11]"A nominee is an entity or individual who holds bare legal title to assets owned by another entity or individual." Lain v. Commissioner, T.C. Memo. 2012-99, slip op. at 13; see also Oxford Capital Corp. v. United States, 211 F.3d 280, 284 (5th Cir. 2000).

[*13] <u>Whether Petitioners May Disavow Intelemed's Return Treatment</u>

As a general rule, a taxpayer is bound by the form of the transaction that the taxpayer has chosen.  See <u>Framatome Connectors USA, Inc. v. Commissioner</u>, 118 T.C. 32, 47 (2002), <u>aff'd</u>, 108 Fed. Appx. 683 (2d Cir. 2004).  A taxpayer may have "less freedom than the Commissioner to ignore the transactional form that he has adopted."  <u>Bolger v. Commissioner</u>, 59 T.C. 760, 767 n.4 (1973); <u>see also</u> <u>Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co.</u>, 417 U.S. 134, 149 (1974) ("[W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, * * * and may not enjoy the benefit of some other route he might have chosen to follow but did not." (Citations omitted.)); <u>United States v. Asiru</u>, 222 Fed. Appx. 584, 587 (9th Cir. 2007).  If the taxpayer seeks to abandon his own tax return treatment, the taxpayer's freedom is further curtailed.  See <u>Norwest Corp. v. Commissioner</u>, 111 T.C. at 145.

In deciding whether a taxpayer may disavow the form of a transaction, we have considered:

> (1) Whether the taxpayer seeks to disavow his or her own tax return treatment for the transaction; (2) whether the taxpayer's tax reporting and other actions show an honest and consistent respect for the alleged substance of the transaction; (3) whether the taxpayer is unilaterally attempting to have the transaction treated differently after

- 14 -

**[14]** it has been challenged; and (4) whether the taxpayer will be unjustly enriched if permitted to alter the transactional form.

Pinson v. Commissioner, slip op. at 27; see also Norwest Corp. v. Commissioner, 111 T.C. at 145.  If the Court permits the taxpayer to disavow the form of the transaction, the taxpayer must then introduce strong proof to establish the taxpayer's claimed substance of the transaction; a preponderance of credible evidence is not sufficient.  See Estate of Durkin v. Commissioner, 99 T.C. 561, 572-574 (1992); Ill. Power Co. v. Commissioner, 87 T.C. 1417, 1434 (1986).

On both its 2000 and 2001 returns Intelemed reported that it made guaranteed payments to Mrs. Howell.  Mr. Howell, acting as Intelemed's TMP, signed Intelemed's 2000 return.  Mrs. Howell, acting as Intelemed's TMP, signed Intelemed's 2001 return.

Mr. Howell testified that he provided the tax information that was used to prepare Intelemed's returns to Intelemed's return preparer, Mitch Wallace. Petitioners later filed untimely joint Federal income tax returns on which they reported Intelemed's payments to Mrs. Howell as distributive shares of partnership income properly classified as passive income that is not subject to self-employment tax.  Petitioners did not file their joint Forms 1040 until after respondent had begun an examination for their 2000-2001 and 2003-05 taxable

[*15] years and had inquired about Mrs. Howell's liability for self-employment tax with respect to the guaranteed payments from Intelemed.

Petitioners controlled Intelemed, Mr. Howell provided the return information to Intelemed's return preparer, and petitioners, acting as Intelemed's TMPs, signed Intelemed's partnership returns for the years at issue. In arguing that the payments were not guaranteed payments to Mrs. Howell, petitioners are attempting to disavow the reporting position they took on Intelemed's returns. Although Intelemed reported the payments to Mrs. Howell as guaranteed payments, petitioners now argue that the payments are partnership distributions rather than guaranteed payments. Petitioners first took this inconsistent position on their delinquently filed 2000 and 2001 Forms 1040. Therefore, they did not take an inconsistent position until after respondent had raised the self-employment tax issue during the examination of Intelemed's 2000 and 2001 returns. Under these circumstances, petitioners may not disavow the form of the transaction as reported on Intelemed's 2000 and 2001 returns. See Pinson v. Commissioner, T.C. Memo. 2000-208; Jacobellis v. Commissioner, T.C. Memo. 1988-315.

Even if we permitted petitioners to disavow the form of the transaction adopted on Intelemed's returns, they still must offer strong proof to show that the reporting by Intelemed was incorrect. They have failed to do so. The only

**[\*16]** evidence petitioners introduced regarding the status of the payments as guaranteed payments was Mr. Howell's testimony. Mr. Howell testified in a conclusory fashion that Intelemed did not make any guaranteed payments to members during the years at issue and that he informed Mr. Wallace of that fact before the Intelemed returns were prepared and filed. We do not find this testimony credible.

In the absence of any corroborating evidence, we reject Mr. Howell's testimony as self-serving and unreliable. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); see also Groetzinger v. Commissioner, 87 T.C. 533, 543-544 (1986). Petitioners introduced no other evidence to prove that the payments to Mrs. Howell were not in substance guaranteed payments under section 707(c) as reported on the Intelemed returns.

Whether Mrs. Howell Received Payments for Services Rendered

Under section 1402(a)(13), a limited partner must include guaranteed payments from net earnings from self-employment in computing self-employment tax if those payments were received "for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services". Petitioners bear the burden of proving that Mrs. Howell did not receive the payments at issue in exchange for services

**[*17]** she rendered to or on behalf of Intelemed.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Intelemed's operating agreement states that Mrs. Howell contributed intellectual property, a business plan, and organizational design at Intelemed's formation.  In addition, Mrs. Howell signed the management agreement on behalf of Intelemed.  Although Mrs. Howell testified that she did not provide any services to Intelemed during the years at issue, we do not find this testimony to be credible when we consider other evidence in the record.  For example, Mrs. Howell testified that she provided marketing advice to Intelemed.  Mr. Howell testified that, from time to time, he discussed Intelemed marketing strategies with his wife.  He also testified that Intelemed used Mrs. Howell's personal credit card to purchase equipment.  Furthermore, Mrs. Howell also executed documents on behalf of Intelemed, including a management agreement conferring on Mr. Howell the right to manage Intelemed's operations, and she served as Intelemed's TMP.

The record establishes that Mrs. Howell provided marketing advice, signed documents and entered into contracts on behalf of Intelemed, and allowed Intelemed to use her credit card and credit rating.  Intelemed's operating agreement recites that Mrs. Howell contributed a business plan and intellectual

[*18] property to Intelemed at its formation. Mrs. Howell, the majority owner of Intelemed, delegated management authority to her husband but still consulted with him from time to time. We conclude, therefore, that Mrs. Howell performed services for Intelemed and that she was not merely a passive investor in Intelemed. We find that the payments to Mrs. Howell were, to some extent, payments for services she rendered to Intelemed.

Petitioners did not attempt to establish that only some portion of the payments to Mrs. Howell was remuneration for services she rendered to Intelemed. Their position was that no portion of the payments was for services Mrs. Howell rendered to Intelemed.[12] While the record shows that the services Mrs. Howell contributed to Intelemed were relatively minimal in comparison to Mr. Howell's, petitioners bear the burden of proving the extent to which the payments to Mrs. Howell did not constitute payments for services rendered. Petitioners did not carry that burden. Accordingly, we sustain respondent's determination.

---

[12]It may well be that respondent has correctly contended that Mrs. Howell was a nominee for Mr. Howell and that the guaranteed payments were in substance guaranteed payments by Intelemed to Mr. Howell. However, in view of the failure of petitioners' proof here, we need not reach these issues.

**[*19]** <u>Conclusion</u>

We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.