RENKEMEYER, CAMPBELL & WEAVER, LLP, TROY RENKEMEYER, TAX MATTERS PARTNER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

RENKEMEYER CAMPBELL GOSE & WEAVER LLP, TROY RENKEMEYER, TAX MATTERS PARTNER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 18735–08, 3624–09.      Filed February 9, 2011.

P is the tax matters partner of a Kansas limited liability partnership engaged in the practice of law. For the law firm's tax year ended Apr. 30, 2004, three of the law firm's partners were attorneys performing legal services. The fourth partner was an S corporation owned by a tax-exempt ESOP whose beneficiaries were the law firm's three attorney partners. For tax year ended Apr. 30, 2005, the law firm's only partners were the three attorneys. For tax year ended Apr. 30, 2004, the three attorney partners each had a one-third capital interest and a 30-percent profits and loss interest in the law firm. The S corporation had a 10-percent profits and loss interest in the law firm. Approximately 99 percent of the law firm's net business income for its tax year ended Apr. 30, 2004, was derived from legal services rendered by the three attorney partners. For tax year ended Apr. 30, 2004, the law firm allocated 87.557 percent of its net business income to the S corporation. R determined that the special allocation did not reflect economic reality and consequently reallocated the law firm's net business income to its partners on the basis of each partner's profits and loss interest. R further determined that the three attorney partners' distributive shares of the law firm's net business income for tax year ended Apr. 30, 2004, and tax year ended Apr. 30, 2005, were net earnings from self-employment subject to tax on self-employment income. *Held*: R's reallocation of the law firm's net business income for its tax year ended Apr. 30, 2004, is sustained. *Held, further,* the law firm's three attorney partners' distributive shares of the law firm's net business income for its tax years ended Apr. 30, 2004 and 2005, are subject to the tax on self-employment income.

*Troy Renkemeyer*, pro se.
*Gregory J. Stull*, for respondent.

## OPINION

JACOBS, *Judge*: The parties submitted these consolidated cases fully stipulated pursuant to Rule 122.

137

During the years in question Troy Renkemeyer (sometimes referred to as petitioner) was the tax matters partner of Renkemeyer, Campbell & Weaver, LLP (the law firm), a limited liability partnership (L.L.P.) registered under the laws of Kansas. Petitioner is a member of the bar of this Court. Respondent mailed petitioner two notices of final partnership administrative adjustment—one for the law firm's tax year ended April 30, 2004 (the 2004 tax year), on May 23, 2008, and the second for the law firm's tax year ended April 30, 2005 (the 2005 tax year), on November 19, 2008. [1]

After concessions, the issues remaining are: (1) Whether a special allocation of the law firm's net business income for the 2004 tax year should be disallowed, and (2) whether income generated from the law firm's legal practice for the 2004 and 2005 tax years, and allocated to the law firm's attorney partners, is subject to self-employment tax.

The law firm's principal place of business, and petitioner's residence, was Kansas when the petition was filed. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## *Background*

### I. *The Law Firm*

The law firm was organized on July 5, 2000. Its practice emphasizes Federal tax law. During the 2004 tax year the law firm's partners consisted of Troy Renkemeyer, Todd Campbell, and Tracy Weaver, all lawyers, and RCGW Investment Management, Inc. (RCGW), a Kansas corporation. In the 2005 tax year the law firm's partners were Messrs. Renkemeyer, Campbell, and Weaver. [2]

Although petitioner asserts that a written partnership agreement exists for the 2004 tax year, he was unable to produce a copy of the agreement. A partnership agreement effective for the 2005 tax year was entered into the record.

---

[1] Respondent issued the notice in docket No. 18735–08 to Renkemeyer, Campbell & Weaver, LLP, Troy Renkemeyer, Tax Matters Partner, and the notice in docket No. 3624–09 to Renkemeyer Campbell Gose & Weaver LLP, Troy Renkemeyer, Tax Matters Partner.

[2] Although listed in the caption in docket No. 3624–09, Gose was not a partner of the law firm in either year at issue.

RCGW's business activities primarily involved the purchase, sale, and rental of real estate. RCGW filed an election to be taxed as an S corporation which was effective December 27, 2000. RCGW was 100 percent owned by RCGW Investment Management, Inc., Employee Stock Ownership Plan and Trust (the ESOP).[3] Messrs. Renkemeyer, Campbell, and Weaver were the beneficiaries of the ESOP.[4]

During all relevant times, the law firm maintained its income tax records on the cash receipts and disbursements method of accounting and, as noted *supra* p. 138, it operated on a fiscal year ending April 30.

## II. *The Law Firm's 2004 Tax Year*

The law firm timely filed Form 1065, U.S. Return of Partnership Income, for its 2004 tax year. Attached to the return was a Schedule K–1, Partner's Share of Income, Credits, Deductions, etc., for each partner. According to the Schedules K–1, the four partners held the following profits and loss interests:

| *Partner* | *Percent* |
| --- | --- |
| Troy Renkemeyer | 30 |
| Todd Campbell | 30 |
| Tracy Weaver | 30 |
| RCGW | 10 |

The Schedules K–1 reported the following capital interests:

| *Partner* | *Percent* |
| --- | --- |
| Troy Renkemeyer | 33.3333 |
| Todd Campbell | 33.3333 |
| Tracy Weaver | 33.3333 |
| RCGW | 0.0000 |

The parties stipulated that of the law firm's gross revenues for the 2004 tax year, $1,634,992 was generated by the performance of legal services by petitioner and Messrs. Campbell and Weaver, and $5,335 was generated as a result of the recognition of passthrough income from RCGW. On

---

[3] The ESOP apparently was intended to be a qualified employee benefit plan pursuant to the provisions of sec. 401(a) in order that its trust would be exempt from income tax pursuant to sec. 501(a). The question of the tax-exempt qualification of the ESOP was not raised by either party. Consequently, we do not make a determination in this regard.

[4] On or about July 15, 2006, RCGW forfeited its authority to do business in Kansas for failure to timely file its annual report.

Form 1065, the law firm reported ordinary income from business activities (net business income) of $1,165,770. The law firm allocated its net business income to its partners as follows:

| Partner | Amount | Percent of total |
|---|---|---|
| Troy Renkemeyer | $74,227 | 6.367 |
| Todd Campbell | 42,668 | 3.660 |
| Tracy Weaver | 28,167 | 2.416 |
| RCGW | 1,020,708 | 87.557 |

The law firm's Form 1065, Statement 10, Partners' Capital Account Summary, for the 2004 tax year disclosed the following capital account information:

| Partner | Beginning capital | Capital contributed | Schedule M–2 ll. 3, 4 & 7 | Withdrawal | Ending capital |
|---|---|---|---|---|---|
| Renkemeyer | –$12,180 | $32,218 | $74,176 | $108,512 | –$14,298 |
| Campbell | –23,489 | 15,453 | 41,108 | 24,648 | 8,424 |
| Weaver | 19,270 | 15,096 | 28,147 | 57,073 | 5,440 |
| RCGW | 60,000 | -0- | 1,019,999 | -0- | 1,079,999 |

RCGW filed a Form 1120S, U.S. Income Tax Return for an S Corporation, on which it reported "other income" of $1,020,708, all of which was passed through from the law firm.

Although the law firm's Form 1065 for the 2004 tax year reported business revenues from its law practice, no portion of those revenues was included on the law firm's tax return as net earnings from self-employment.

Respondent examined the law firm's tax return for the 2004 tax year and concluded that the partners' distributive shares of the law firm's net business income should be reallocated to each partner consistent with the profits and loss sharing percentage as reported on the partners' respective Schedules K–1. See *supra* p. 139. Further, respondent reduced the law firm's gross business revenues by $905,000 (and consequently reduced the law firm's net business income) after determining that a legal fee in a like amount had not been received during the 2004 tax year.[5]

As a result of the examination, respondent determined each partner's distributive share of the law firm's net business income for the 2004 tax year to be:

---

[5] Petitioner does not dispute this reduction.

| Partner | Amount | Percent of total |
|---------|--------|------------------|
| Troy Renkemeyer | $78,231 | 30 |
| Todd Campbell | 78,231 | 30 |
| Tracy Weaver | 78,231 | 30 |
| RCGW | 26,077 | 10 |

Respondent also determined that petitioner's and Messrs. Campbell's and Weaver's distributive shares of the law firm's net business income as redetermined by respondent were subject to self-employment tax under the Self-Employment Contributions Act of 1954, secs. 1401–1403.

III. *The Law Firm's 2005 Tax Year*

On May 1, 2004, the law firm's partnership agreement was amended, and RCGW's interest was eliminated. The amended partnership agreement provided for two classes of ownership interests: "General Managing Partner Partnership Units" and "Investing Partnership Units", with the general managing partner partnership units having full authority to act on behalf of the partnership. Pursuant to the amended partnership agreement, each partner was required to contribute $10 for his general managing partner partnership units and $100 for his investing partnership units. The resulting interests in the law firm under the amended partnership agreement were as follows:

| Partner | General managing partner interest | Investing partner interest |
|---------|-----------------------------------|----------------------------|
| Troy Renkemeyer | 1% | 32% |
| Todd Campbell | 1 | 32 |
| Tracy Weaver | 1 | 32 |

Thus, petitioner and Messrs. Campbell and Weaver shared equal authority in the law firm. With respect to the allocation of the partners' distributive shares, the partnership agreement provided that all profits and losses of the partnership, and all income, deductions, and credits, were to be allocated according to the partners' ownership interests set forth *supra* except that

the allocation of such profit and income items for any given calendar month to the capital account of any given Partner shall be limited in such calendar month to the Average Monthly Collections from such Partner's

clients. For purposes of this Agreement, the term Average Monthly Collections shall mean the average of the monthly collections of the current fiscal year. However, this Paragraph should not apply to the extent it would cause the profit allocation in any calendar month to be less than Five Thousand Dollars ($5,000). * * * Notwithstanding anything contained herein to the contrary, in the event the Limited Liability Partnership collects a fee in an amount over One Hundred Thousand Dollars ($100,000) pursuant to a single engagement, then the Partners, other than the Partner whose client pays such fee, shall collectively receive 30% of such fee, and shall share in such fee equally.

The law firm timely filed Form 1065 for its 2005 tax year and reported net business income of $541,064. The law firm allocated its net business income to its partners on Schedules K–1 as follows:

| Partner | Amount | Percent of total |
|---|---|---|
| Troy Renkemeyer | $195,066 | 36 |
| Todd Campbell | 219,741 | 41 |
| Tracy Weaver | 126,257 | 23 |

Respondent accepted this special allocation of net business income.

Respondent determined that the net business income allocated to petitioner and Messrs. Campbell and Weaver was subject to self-employment tax.

## Discussion

### I. *The Law Firm's 2004 Tax Year Special Allocation*

We first address whether the special allocation of the law firm's 2004 tax year net business income was proper. Petitioner bears the burden of proof. Rule 142(a); see *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

The law firm, an L.L.P., was for the tax years at issue an "eligible entity". See sec. 301.7701–3(a), Proced. & Admin. Regs. By not electing otherwise, the law firm was classified as a partnership. See sec. 301.7701–3(b)(1)(i), Proced. & Admin. Regs.

A partnership is not subject to Federal income tax. Secs. 701, 6031. Rather, the partners are liable for tax in their separate or individual capacities. Sec. 701. Each partner is required to take into account his distributive share of the

partnership's income, gain, loss, deductions, and credits. Sec. 702(a).

A partner's distributive share of income, gain, loss, deductions, or credits generally is determined by the governing partnership agreement. Sec. 704(a). A partnership agreement may be either written or oral. *Stern v. Commissioner*, T.C. Memo. 1984–383; sec. 1.761–1(c), Income Tax Regs. If the partnership agreement does not provide how a partner's distributive share is to be determined, or if the allocation provided in the partnership agreement does not have substantial economic effect, the partner's distributive share is determined in accordance with the partner's interest in the partnership. Sec. 704(b); *Holdner v. Commissioner*, T.C. Memo. 2010–175.

A partner's interest in a partnership refers to the manner "in which the partners have agreed to share the economic benefit or burden * * * corresponding to the income, gain, loss, deduction, or credit (or item thereof) that is allocated." Sec. 1.704–1(b)(3)(i), Income Tax Regs. A partner's interest in a partnership is determined by taking into account all relevant facts and circumstances. Sec. 704(b); *Vecchio v. Commissioner*, 103 T.C. 170, 193 (1994); sec. 1.704–1(b)(3)(i), Income Tax Regs.

For the tax years at issue the relevant regulations provided that all partners' interests in a partnership are presumed to be equal on a per capita basis. Sec. 1.704–1(b)(3)(i), Income Tax Regs. This presumption may be rebutted if the facts and circumstances show otherwise. *Id.*

Petitioner asserts that the special allocation of the net business income of the law firm for its 2004 tax year was proper because the allocation was made pursuant to the provisions of the partnership agreement. But as noted *supra* p. 138, the partnership agreement effective for the 2004 tax year is not in the record.

Petitioner's bald assertion that the missing partnership agreement provides for a special allocation is not sufficient to carry petitioner's burden to establish the propriety of the special allocation of the net business income of the law firm for its 2004 tax year. Further, although petitioner asserts that the partnership agreement effective for the 2004 tax year is similar to the partnership agreement effective for the 2005 tax year (the 2005 partnership agreement), and the

2005 partnership agreement is in the record, the 2005 partnership agreement does not support petitioner's claim that the special allocation of the net business income of the law firm for its 2004 tax year is proper.

Petitioner alleges "that the only change made in the amended version * * * [of the partnership agreement] was to eliminate the corporate partner [RCGW] as a capital partner." However, the 2005 partnership agreement provides that the allocation of the partners' distributive shares is to be made according to (1) the ownership interests of the partners, except that (2) the allocation to each partner is to be limited to the average monthly collection of fees from the partner's clients, with the further exception that the allocation is not to be less than $5,000 per calendar month. Assuming arguendo that this provision was part of the partnership agreement effective for the 2004 tax year, we cannot see how the special allocation in which RCGW received 87.557 percent of the law firm's net income was consistent with the partnership agreement. Of the amount of the law firm's gross business revenues for the 2004 tax year, less than 1 percent of the revenue, computed after the reduction for the $905,000 unpaid fee, was attributable to RCGW.[6] Hence, we look to the partners' respective interests in the partnership (determined by taking into account all facts and circumstances) to determine the proper allocation of the law firm's net business income. See sec. 704(b).

In determining the partners' respective interests in a partnership, the following factors are deemed relevant: (a) The partners' relative capital contributions to the partnership; (b) the partners' respective interests in partnership profits and losses; (c) the partners' relative interests in cashflow and other nonliquidating distributions; and (d) the partners' rights to capital upon liquidation. *Holdner v. Commissioner*, *supra*; *Estate of Ballantyne v. Commissioner*, T.C. Memo. 2002–160, affd. 341 F.3d 802 (8th Cir. 2003); sec. 1.704–1(b)(3)(ii), Income Tax Regs. By applying these factors to the specific facts of these cases, we conclude that the special allocation of the law firm's net business income for the 2004 tax year was improper.

---

[6] The law firm generated $729,992 in legal fees from the three attorney partners but only $5,335 from RCGW.

The first factor to be considered is the partners' relative capital contributions. The only information with respect to the partners' respective capital accounts consists of the information set forth on statement 10 of the law firm's Form 1065 and the partners' respective Schedules K–1 for the 2004 tax year, both of which indicate that RCGW made no capital contributions in the 2004 tax year to the partnership, whereas petitioner and Messrs. Campbell and Weaver each contributed capital to the partnership during the 2004 tax year. Indeed, the record does not reveal whether RCGW contributed capital to the partnership in any year. Consequently, this factor does not support the law firm's special allocation for the 2004 tax year.

The second factor we consider is the partners' interests in the profits and losses of the partnership. As noted *supra* p. 139, according to the Schedules K–1, petitioner and Messrs. Campbell and Weaver each held a 33.3333-percent capital interest and a 30-percent profits and loss interest, whereas RCGW held a 10-percent profits and loss interest. Consequently, this factor does not support the law firm's special allocation for the 2004 tax year.

The third factor we consider is the partners' interests in cashflow and other nonliquidating distributions. Again, the record is unclear with respect to this factor, but statement 10 of the law firm's 2004 tax year's Form 1065 and the partners' respective Schedules K–1 report that in the 2004 tax year RCGW received no distributions from the partnership, whereas petitioner and Messrs. Campbell and Weaver did receive distributions. Consequently, this factor does not support the law firm's special allocation for the 2004 tax year.

The fourth and final factor to be considered is the partners' rights to distributions of capital upon liquidation of the partnership. The record does not include information with respect to this factor for the 2004 tax year or earlier. Consequently, this factor does not support the law firm's special allocation for the 2004 tax year.

To conclude, the facts and circumstances support respondent's reallocation of the law firm's net business income for its 2004 tax year consistent with the partners' profits and loss interests.

II. *Self-Employment Tax*

We now turn our attention to whether the attorney partners' distributive shares of the law firm's business income for the 2004 and 2005 tax years are subject to self-employment tax. Petitioner again bears the burden of proof with respect to this issue.

Section 1401(a) imposes a tax on the self-employment income of every individual for a taxable year (the self-employment tax). Self-employment income is defined as "the net earnings from self-employment derived by an individual * * * during any taxable year" excluding (1) the portion in excess of the Social Security wage base limitation for the year as well as (2) all earnings from self-employment if the total amount of the individual's net earnings from self-employment for the taxable year is less than $400. Sec. 1402(b).

Section 1402(a) defines net earnings from self-employment as:

the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss described in section 702(a)(8) from any trade or business carried on by a partnership of which he is a member * * *

Section 702(a)(8) provides that in determining his income tax, each partner shall take into account separately his distributive share of the partnership's taxable income or loss, exclusive of items requiring separate computation under other paragraphs of section 702(a). Therefore, in general, a partner must include his distributive share of partnership income in calculating his net earnings from self-employment. Fees for services, like those generated by a law partnership, are part of the partners' distributive shares under section 702(a)(8). Consequently, such fees are generally included in calculating net earnings from self-employment, unless an exclusion applies.

Section 1402(a) provides several exclusions from the general self-employment tax rule. In particular, section 1402(a)(13) provides:

there shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services;

Petitioner posits that his and Messrs. Campbell's and Weaver's interests in the law firm (organized as a Kansas L.L.P.) each should be considered a limited partner's interest in a limited partnership for purposes of section 1402(a)(13). Petitioner maintains that his and Messrs. Campbell's and Weaver's respective interests in the law firm share characteristics of those of a limited partner in a limited partnership because (a) their interests are designated as limited partnership interests in the law firm's organizational documents, and (b) his and Messrs. Campbell's and Weaver's interests in the law firm enjoy limited liability pursuant to Kansas law. [7] Hence, petitioner argues, his and Messrs. Campbell's and Weaver's distributive shares of the law firm's business income qualify for the section 1402(a)(13) exception. We disagree with petitioner's position.

A limited partnership has two fundamental classes of partners, general and limited. General partners typically have management power and unlimited personal liability. On the other hand, limited partners lack management powers but enjoy immunity from liability for debts of the partnership. 1 Bromberg & Ribstein, Partnership, sec. 1.01(b)(3) (2002–2 Supp.). Indeed, it is generally understood that a limited partner could lose his limited liability protection were he to engage in the business operations of the partnership. [8] Consequently, the interest of a limited partner in a limited part-

---

[7] Petitioner, in his opening brief, refers to a chart allegedly attached to the brief as an exhibit that compares the characteristics of a partner in a general partnership, a limited partnership, and an L.L.P. under Kansas law, with the characteristics of the law firm's investing partners' interests. No such chart was attached to petitioner's brief.

[8] We are mindful that at the time of the statute's enactment, the Revised Uniform Limited Partnership Act of 1976 provided that a "limited partner" would lose his limited liability protection if:

in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business. However, if the limited partner's participation in the control of the business is not substantially the same as the exercise of the powers of a general partner, he is liable only to persons who transact business with the limited partnership with actual knowledge of his participation in control. [Revised Unif. Ltd. Pship. Act (1976), sec. 303(a), 6B U.L.A. 180 (2008).]

nership is generally akin to that of a passive investor. See 3 *id.* sec. 12.01(a) (1988).

In contrast, all partners of an L.L.P. enjoy limited liability protection and may have management powers. 1 *id.* sec. 1.01(b)(5) (2005–1 Supp.). In essence, an L.L.P. is a general partnership that affords a form of limited liability protection for all its partners by filing a statement of qualification with the appropriate State authorities. See *Garnett v. Commissioner*, 132 T.C. 368, 375 (2009); 1 Bromberg & Ribstein, *supra* sec. 1.01(b)(5). In Kansas, an L.L.P. is formed under the Kansas Uniform Partnership Act, which governs general partnerships. See Kan. Stat. Ann. sec. 56a–1001 (2005). A Kansas partnership that elects to become an L.L.P. "continues to be the same entity that existed before the filing of a statement of qualification under K.S.A. 56a–1001." Kan. Stat. Ann. sec. 56a–201(b) (2005).

Section 1402(a)(13) was originally enacted as section 1402(a)(12) at a time (1977) before entities such as L.L.P.s were contemplated,[9] and the applicable statute did not, and still does not, define a "limited partner". When L.L.P.s (and limited liability companies) began to be frequently used, it was determined that there needed to be a definition of "limited partner" for purposes of the self-employment tax. In 1997 the Secretary issued proposed regulations which were intended to do just that. See sec. 1.1402(a)–2, Proposed Income Tax Regs., 62 Fed. Reg. 1704 (Jan. 13, 1997). The proposed regulations ignited controversy. As a result, Congress enacted legislation which provided that "No temporary or final regulation with respect to the definition of a limited partner under section 1402(a)(13) of the Internal Revenue Code of 1986 may be issued or made effective before July 1, 1998." Taxpayer Relief Act of 1997, Pub. L. 105–34, sec. 935, 111 Stat. 882. Indeed, a Sense of the Senate resolution with respect to this provision stated:

SEC. 734. SENSE OF THE SENATE WITH RESPECT TO SELF-
        EMPLOYMENT TAX OF LIMITED PARTNERS.

(a) Findings.—The Senate finds that—

\*    \*    \*    \*    \*    \*    \*

---

[9] L.L.P.s did not exist until 1991. See 1 Bromberg & Ribstein, Partnership, sec. 1.01(b)(5) (2005–1 Supp.).

(4) certain types of entities, such as limited liability companies and limited liability partnerships, were not widely used at the time the present rule relating to limited partners was enacted, and that the proposed regulations attempt to address owners of such entities;

(5) the Senate is concerned that the proposed change in the treatment of individuals who are limited partners under applicable State law exceeds the regulatory authority of the Treasury Department and would effectively change the law administratively without congressional action; and

(6) the proposed regulations address and raise significant policy issues and the proposed definition of a limited partner may have a substantial impact on the tax liability of certain individuals and may also affect individuals' entitlement to social security benefits.

(b) Sense of Senate.—It is the sense of the Senate that—

(1) the Department of the Treasury and the Internal Revenue Service should withdraw Proposed Regulation 1.1402(a)–2 which imposes a tax on limited partners; and

(2) Congress, not the Department of the Treasury or the Internal Revenue Service, should determine the tax law governing self-employment for limited partners.

[143 Cong. Rec. 13297 (1997). [10]]

As of 2005 Congress had not issued any other pronouncements with respect to the definition of a limited partner for purposes of the self-employment tax, nor had the Secretary. We therefore are left to interpret the statute without elaboration.

Since section 1402(a)(13) does not define "limited partner", we apply accepted principles of statutory construction to ascertain Congress' intent. It is a well-established rule of construction that if a statute does not define a term, the term is to be given its ordinary meaning. *Gates v. Commissioner*, 135 T.C. 1, 6 (2010); see *Perrin v. United States*, 444 U.S. 37, 42 (1979). And we look to the legislative history to ascertain Congress' intent if the statutory purpose is obscured by ambiguity. See *Burlington N. R.R. v. Okla. Tax Commn.*, 481 U.S. 454, 461 (1987).

"Limited partner" is a technical term which has become obscured over time because of the increasing complexity of partnerships and other flowthrough entities as well as the history of section 1402(a)(13). We therefore must look to the legislative history for guidance.

Section 1402(a)(13) was enacted by the Social Security Amendments of 1977, Pub. L. 95–216, sec. 313(b), 91 Stat.

---

[10] Although the moratorium has expired, the Secretary has not yet promulgated any replacement regulations.

1536. The relevant legislative history provides insight with respect to Congress' intent:

Under present law each partner's share of partnership income is includable in his net earnings from self-employment for social security purposes, irrespective of the nature of his membership in the partnership. The bill would exclude from social security coverage, the distributive share of income or loss received by a limited partner from the trade or business of a limited partnership. *This is to exclude for coverage purposes certain earnings which are basically of an investment nature.* However, the exclusion from coverage would not extend to guaranteed payments (as described in 707(c) of the Internal Revenue Code), such as salary and professional fees, received for services actually performed by the limited partner for the partnership. [H. Rept. 95–702 (Part 1), at 11 (1977); emphasis added.]

The insight provided reveals that the intent of section 1402(a)(13) was to ensure that individuals who merely invested in a partnership and who were not actively participating in the partnership's business operations (which was the archetype of limited partners at the time) would not receive credits toward Social Security coverage. The legislative history of section 1402(a)(13) does not support a holding that Congress contemplated excluding partners who performed services for a partnership in their capacity as partners (i.e., acting in the manner of self-employed persons), from liability for self-employment taxes.

Aside from a nominal amount of income arising from recognition of certain pass-through income from RCGW, all of the law firm's revenues were derived from legal services performed by petitioner and Messrs. Campbell and Weaver in their capacities as partners. Petitioner and Messrs. Campbell and Weaver each contributed a nominal amount ($110) for their respective partnership units. Thus it is clear that the partners' distributive shares of the law firm's income did not arise as a return on the partners' investment and were not "earnings which are basically of an investment nature." Instead, the attorney partners' distributive shares arose from legal services they performed on behalf of the law firm.

To conclude, we hold that the respective distributive shares of petitioner and Messrs. Campbell and Weaver arising from the legal services they performed in their capacity as partners in the law firm are subject to self-employment taxes for the 2004 and 2005 tax years.

We have considered petitioner's other arguments and conclude they are irrelevant, moot, or meritless. To reflect the foregoing and the concessions of the parties,

*Decisions will be entered under Rule 155.*