# United States Tax Court

161 T.C. No. 12

SOROBAN CAPITAL PARTNERS LP, SOROBAN CAPITAL
PARTNERS GP LLC, TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 16217-22, 16218-22.                Filed November 28, 2023.

————

PS, a limited partnership subject to the TEFRA audit and litigation procedures, made guaranteed payments and distributed ordinary income to its limited partners. It excluded distributions of ordinary income to its limited partners from its computation of net earnings from self-employment. R determined that the distributions of ordinary income should have been included in PS's computation of net earnings from self-employment.

P, the tax matters partner of PS, filed a Motion for Summary Judgment asking the Court to hold that a limited partner's distributive share of partnership income is excluded from net earnings from self-employment. The parties cross-moved as to whether we have jurisdiction in these partnership-level proceedings to inquire into the functions and roles of PS's limited partners.

*Held*: I.R.C. § 1402(a)(13) contains a limited partner exception that excludes from net earnings from self-employment "the distributive share of any item of income or loss of a limited partner, as such."

**Served 11/28/23**

*Held*, *further*, the limited partner exception of I.R.C. § 1402(a)(13) does not apply to a partner who is limited in name only.

*Held, further*, determining whether a partner is a limited partner in name only requires an inquiry into the functions and roles of the limited partner.

*Held, further*, because net earnings from self-employment is a partnership item, an inquiry into the functions and roles of a limited partner is a factual determination that underlies a partnership item that is properly determined in a TEFRA proceeding. Treas. Reg. § 301.6231(a)(3)-1(b).

*Held, further*, P's Motion for Summary Judgment will be denied; R's Motion for Partial Summary Judgment will be granted.

––––––––––

*Elizabeth J. Smith*, *Kathleen S. Gregor*, *Caitlyn M. Leonard*, and *Armando Gomez*, for petitioner.

*Emerald G. Smith*, *Naseem Jehan Khan*, *Michael E. Washburn*, and *Jonathan E. Cornwell*, for respondent.

OPINION

BUCH, *Judge*: Soroban Capital Partners LP (Soroban) is a limited partnership composed of a general partner and limited partners. For 2016 and 2017 (years in issue), Soroban was subject to the TEFRA[1] unified audit and litigation procedures of sections 6221–6234[2] as then

––––––––––

[1] Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71. The TEFRA procedures were repealed and apply only to tax years beginning before January 1, 2018. Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101(a), (g), 129 Stat. 584, 625, 638. Neither party disputes that these cases are TEFRA proceedings.

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times,

in effect. On its returns for the years in issue, it reported as net earnings from self-employment its guaranteed payments to its limited partners plus the general partner's share of ordinary business income. The Commissioner adjusted Soroban's net earnings from self-employment by increasing it to include the shares of ordinary business income allocated to the limited partners, taking the position that they were limited partners in name only.

Pending before the Court are two Motions in each of these cases. The first is Soroban Capital Partners GP LLC's (petitioner) Motion for Summary Judgment in which petitioner asks the Court to conclude that the ordinary business income that is allocated to Soroban's limited partners is excluded from its net earnings from self-employment merely by virtue of the partners' being labeled limited partners. That Motion asks in the alternative that we hold that an inquiry into the functional roles of Soroban's limited partners cannot be determined in these partnership-level proceedings. The second motion is the Commissioner's Motion for Partial Summary Judgment, in which he asks us to conclude that an inquiry into the functional roles of Soroban's limited partners is a partnership item that can be determined in these partnership-level proceedings.

Partnerships are required to include in their calculation of net earnings from self-employment the distributive shares of their partners' income. But section 1402(a)(13) excludes from this computation a limited partner's distributive share of income (limited partner exception). Congress intended for this limited partner exception to apply to earnings of an investment nature. To determine whether earnings allocated to limited partners are of an investment nature necessarily requires an inquiry into the functions and roles of the limited partners.

Because the partnership is required to calculate net earnings from self-employment at the partnership level, any adjustment to this calculation must be made in a partnership-level proceeding. Our jurisdiction to make determinations in a partnership-level proceeding depends on whether the item to be determined is a partnership item. A partnership item is any item required to be taken into account by a partnership under subtitle A that is more appropriately determined at the partnership level plus any legal or factual determination underlying such an item. Subtitle A requires partnerships to determine and report

and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are shown in U.S. dollars and rounded to the nearest dollar.

the net earnings from self-employment. Therefore, we have jurisdiction to determine whether Soroban's shares of ordinary business income allocated to its limited partners are excluded from net earnings from self-employment in these partnership-level proceedings.

*Background*

The facts described below are derived from the parties' Motions and pleadings in the record of these cases. Rule 121(b).[3] They are stated solely for purposes of deciding the pending Motions and are not findings of fact for these cases. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Soroban is an investment firm that is organized as a Delaware limited partnership. It was originally formed as a limited liability company (LLC), but converted to a limited partnership pursuant to Delaware law on January 1, 2015. Soroban is classified as a partnership for federal income tax purposes.

I.  *Soroban's Limited Partnership Agreement*

Soroban's Limited Partnership Agreement sets forth the terms of the partnership. It states that Soroban has six partners in total, which includes one general partner and five limited partners. Petitioner is the general partner and tax matters partner. The limited partners are Eric Mandelblatt, Gaurav Kapadia, Scott Friedman, EWM1 LLC, and GKK LLC. However, because both EWM1 and GKK are single-member LLCs wholly owned by Mr. Mandelblatt and Mr. Kapadia, respectively, they are disregarded for federal income tax purposes.[4] Therefore, for federal income tax purposes, Soroban has only three limited partners (Mr. Mandelblatt, Mr. Kapadia, and Mr. Friedman).

The Limited Partnership Agreement provides the roles and responsibilities of Soroban's partners. It lists the general partner and its role and authority over the business affairs of the partnership; the limited partners and their roles and interests in the partnership; how the profits and losses are to be allocated; the terms surrounding capital contributions; the voting classes; and the compensation provided to the

---

[3] The Court's Rules were amended effective March 20, 2023, after the pending Motions were filed. For purposes of these Motions, we apply the Rules as in effect at the time the Motions were filed.

[4] Single member entities are disregarded as entities separate from their owners. Treas. Reg. §§ 301.7701-1(a)(4), 301.7701-3(f)(2).

limited partners in exchange for their services. Mr. Mandelblatt, Mr. Kapadia, and Mr. Friedman received guaranteed payments in exchange for providing services to Soroban.

II.    *2016 and 2017 Tax Returns*

Soroban filed Forms 1065, U.S. Return of Partnership Income, for the years in issue. On those returns Soroban identified petitioner as the general partner and Mr. Mandelblatt, Mr. Kapadia, and Mr. Friedman as limited partners. It reported total net earnings from self-employment of $2,035,395 and $1,901,131 for 2016 and 2017, respectively. These totals represented the guaranteed payments received by Mr. Mandelblatt, Mr. Kapadia, and Mr. Friedman for their services to the partnership, and petitioner's share of Soroban's ordinary business income. However, Soroban excluded Mr. Mandelblatt's, Mr. Kapadia's, and Mr. Friedman's shares of Soroban's ordinary business income in its computation of net earnings from self-employment.

On April 25, 2022, the Commissioner issued Notices of Final Partnership Administrative Adjustment for the years in issue, increasing Soroban's net earnings from self-employment and gross nonfarm income. Petitioner, as tax matters partner, filed a timely Petition challenging the Commissioner's determinations.

Petitioner filed a Motion for Summary Judgment, asking the Court to find as a matter of law (1) that section 1402(a)(13) excludes Mr. Mandelblatt's, Mr. Kapadia's, and Mr. Friedman's shares of Soroban's ordinary business income from net earnings from self-employment and thus excludes those earnings from self-employment tax; or in the alternative, (2) that any inquiry into a limited partner's role at Soroban does not concern a partnership item and cannot be resolved in a TEFRA partnership-level proceeding. The Commissioner filed a Motion for Partial Summary Judgment asking the Court to find as a matter of law that an inquiry into a limited partner's role at Soroban does concern a partnership item and can be resolved in these proceedings.

*Discussion*

These cases present the question of whether Soroban's net earnings from self-employment should include its limited partners' distributive shares of ordinary business income. But resolving this question requires us to address two preliminary issues. First, we must determine the scope of the limited partner exception of section

1402(a)(13), which excludes from net earnings from self-employment the distributive share of "a limited partner, as such." If we conclude that this limited partner exception requires an inquiry into a limited partner's role in the partnership, we must determine whether we have jurisdiction to make that inquiry in these partnership-level proceedings.

## I. *Summary Judgment Standard*

We may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp.*, 98 T.C. at 520. The moving party bears the burden of showing that there is no genuine dispute as to any material fact. *Sundstrand Corp.*, 98 T.C. at 520. When a motion for summary judgment is properly made and supported, an opposing party may not rest on mere allegations or denials. Rule 121(d). Rather, the party's response, by affidavits or declarations, or as otherwise provided in Rule 121, must set forth specific facts showing there is a genuine factual dispute for trial. Rule 121(d). In deciding whether to grant summary judgment, we view the facts and make inferences in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520.

## II. *Self-Employment Tax*

Section 1401(a) imposes a tax on the self-employment income of individuals. *See also* Treas. Reg. § 1.1401-1(a). Self-employment income is defined as "the net earnings from self-employment derived by an individual . . . during any taxable year." I.R.C. § 1402(b); *Howell v. Commissioner*, T.C. Memo. 2012-303, at *9. Section 1402(a) in turn defines net earnings from self-employment as

> the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss described in section 702(a)(8) from any trade or business carried on by a partnership of which he is a member.

Partnerships are required to determine and report its "partners' distributive shares of income, gains, deductions, and credit." *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir. 1998); I.R.C. § 6031; *see also Weiner v. United States*, 389 F.3d 152, 154 (5th Cir. 2004). And under section 702(a)(8), each partner is required to separately take into

account their distributive share of the partnership's "taxable income or loss, exclusive of items requiring separate computation under other paragraphs of [section 702(a)]." Taken together, these Code sections require partners to include their distributive shares of partnership income in net earnings from self-employment. I.R.C. §§ 1402(a), 702(a)(8); *Renkemeyer, Campbell & Weaver, LLP v. Commissioner*, 136 T.C. 137, 146 (2011).

But there are exceptions to this rule. Specifically, section 1402(a)(13) contains a limited partner exception that excludes from net earnings from self-employment

> the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services.

Soroban included the guaranteed payments distributed to Mr. Mandelblatt, Mr. Kapadia, and Mr. Friedman in its net earnings from self-employment, but it failed to include their distributive shares of ordinary business income. Disagreeing with this computation, the Commissioner adjusted Soroban's net earnings from self-employment by the amount of the distributive shares allocated to Mr. Mandelblatt, Mr. Kapadia, and Mr. Friedman. We must determine whether Mr. Mandelblatt, Mr. Kapadia, and Mr. Friedman are "limited partners, as such" as that phrase is used in section 1402(a)(13), and thus whether Soroban properly excluded their shares of ordinary business income from its net earnings from self-employment.

A.     *Limited Partner, As Such*

Section 1402(a)(13) does not define the phrase "limited partner, as such." However, legislative history and caselaw provide us with insight on Congress's intended meaning. The limited partner exception under section 1402(a)(13) was enacted in 1977[5] to "exclude from social security coverage, the distributive share of income or loss received by a

---

[5] This law was originally enacted as section 1402(a)(12). *See* Social Security Amendments of 1977, Pub. L. No. 95-216, § 313(b), 91 Stat. 1509, 1536.

limited partner from the trade or business of a limited partnership."[6] Social Security Amendments of 1977, § 313(b), 91 Stat. at 1536; H.R. Rep. No. 95-702, pt. 1, at 11, *as reprinted in* 1977 U.S.C.C.A.N. at 4168. Essentially, it was enacted to exclude earnings that are of an investment nature. H.R. Rep. No. 95-702, pt. 1, at 11, *as reprinted in* 1977 U.S.C.C.A.N. at 4168.

In 1997 Treasury issued a proposed regulation seeking to define the scope of the limited partner exception. *See* Prop. Treas. Reg. § 1.1402(a)-2, 62 Fed. Reg. 1702 (Jan. 13, 1997). The proposed regulation provided that an individual would not be treated as a limited partner if the individual had personal liability for partnership debts, had authority to contract on behalf of the partnership, or participated in the partnership's trade or business for more than 500 hours during the partnership's taxable year. *Id.* para. (h)(2), 62 Fed. Reg. at 1704.

This proposal received much criticism. That criticism led Congress to issue a moratorium prohibiting Treasury from issuing any temporary or final regulation with respect to the definition of a limited partner under section 1402(a)(13) until July 1, 1998. Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 935, 111 Stat. 788, 882. Congress's reasoning behind the moratorium was that "the Senate [was] concerned that the proposed change in the treatment of individuals who are limited partners under applicable State law exceeds the regulatory authority of the Treasury Department and would effectively change the law administratively without congressional action." Revenue Reconciliation Act of 1997, H.R. 2014, 105th Cong., 143 Cong. Rec. S6694, S6774, S6819 (1997).[7]

Since the moratorium, Congress has briefly discussed the definition of limited partner but has not defined it. *See, e.g.,* Staff of

---

[6] Congress enacted this provision out of concern for the use of limited partnership investments to obtain Social Security benefits. Before its enactment, business organizations could solicit investments in limited partnerships as a means for investors to become insured for Social Security benefits. In these situations investors in the limited partnership would perform no services for the partnership and receive Social Security coverage based on investment income. *See* H.R. Rep. No. 95-702, pt. 1, at 40–41 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 4155, 4197–98.

[7] The Sense of the Senate Resolution also noted that entities like LLCs and limited liability partnerships (LLPs) were not widely used at the time the limited partner exception was enacted, and it recognized that the proposed regulation attempted to address owners of those entities. H.R. 2014, 105th Cong., 143 Cong. Rec. S6694, S6774, S6819.

J. Comm. on Tax'n, 110th Cong., Present Law and Analysis Relating to Tax Treatment of Partnership Carried Interests and Related Issues, Part I, JCX-62-07, at 35 n.64 (J. Comm. Print 2007) ("[L]imited partner status is determined under State law. Issues have arisen under present law as to the proper [self-employment] tax treatment of individuals who may be limited partners under State law but who participate in the management and operation of the partnership.").[8] Furthermore, Treasury has yet to issue any final or temporary regulation defining "limited partner" under section 1402(a)(13).

In 2011 we were called upon to determine the scope of the limited partner exception. We applied statutory construction principles to determine whether partners in an LLP should be considered limited partners under section 1402(a)(13). *See Renkemeyer*, 136 T.C. 137. In *Renkemeyer*, 136 T.C. at 150, we analyzed the legislative history of section 1402(a)(13) and concluded that its intent "was to ensure that individuals who merely invested in a partnership and who were not actively participating in the partnership's business operations . . . would not receive credits towards Social Security coverage." We further found that "[t]he legislative history . . . does not support a holding that Congress contemplated excluding partners who performed services for a partnership in their capacity as partners (i.e., acting in the manner of self-employed persons), from liability for self-employment taxes." *Renkemeyer*, 136 T.C. at 150. Lastly, we held that the partners in that case were not limited partners for purposes of section 1402(a)(13) because their "distributive shares arose from legal services . . . performed on behalf of the law firm" and not "as a return on the partners' investments." *Renkemeyer*, 136 T.C. at 150.

In *Renkemeyer* we specifically applied a functional analysis test to determine whether the limited partner exception applied. But that case specifically dealt with an LLP and not a limited partnership as present here. While there have been subsequent opinions applying *Renkemeyer* to determine whether taxpayers in passthrough entities are

---

[8] Joint Committee on Taxation reports are not considered legislative history and carry persuasive weight similar to law review articles. *See Gregory v. Commissioner*, 149 T.C. 43, 55 (2017) (noting that the Joint Committee on Taxation's commentary on tax laws after Congress enacts them does "not inform the decisions of the members of Congress who vot[e] in favor of the [law]" and "[t]he Supreme Court has told us such '[p]ost-enactment legislative history . . . is not a legitimate tool of statutory interpretation,'" but instead is as persuasive as law review articles (alterations in original) (first quoting *United States v. Woods*, 571 U.S. 31, 48 (2013); and then quoting *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011))).

limited partners under section 1402(a)(13), we have not addressed whether a limited partner in a state law limited partnership must satisfy a functional analysis test to be entitled to the limited partner exception.[9] *See, e.g.*, *Castigliola v. Commissioner*, T.C. Memo. 2017-62, at *7–14 (finding professional LLC members not limited partners for purposes of section 1402(a)(13)).

### B.     *Parties Arguments*

Petitioner contends that Mr. Mandelblatt, Mr. Kapadia, and Mr. Friedman are state law limited partners and therefore their distributive shares of income are excluded from net earnings from self-employment under section 1402(a)(13). Petitioner argues that because Soroban is a state law limited partnership and its Limited Partnership Agreement identified Mr. Mandelblatt, Mr. Kapadia, and Mr. Friedman as limited partners, section 1402(a)(13) is satisfied.

The Commissioner disagrees, arguing that the distributive shares of income of limited partners in state law limited partnerships are not automatically exempt from self-employment income. He asserts that the Court must apply a functional analysis test, similar to the test outlined in *Renkemeyer* and subsequent cases, to determine whether individuals are limited partners pursuant to section 1402(a)(13).

We agree with the Commissioner. A functional analysis test should be applied when determining whether the limited partner exception under section 1402(a)(13) applies to limited partners in state law limited partnerships.

### C.     *Whether Soroban's Partners are Limited Partners for Purposes of Section 1402(a)(13)*

Section 1402(a)(13) excludes from net earnings from self-employment "the distributive share of any item of income or loss of a *limited partner, as such*." (Emphasis added.) Neither section 1402(a)(13) nor applicable regulations define the phrase "limited partner, as such." Therefore, we use principles of statutory construction to ascertain Congress's intent.

---

[9] In *Joseph v. Commissioner*, T.C. Memo. 2020-65, at *60 n.9, we declined to answer whether a de jure limited partner must satisfy *Renkemeyer*'s functional analysis test to be entitled to the limited partner exclusion.

For statutory interpretation, we begin with the text of the statute. *See Ross v. Blake*, 578 U.S. 632, 638 (2016). It is a well-established rule of construction that if a statute does not define a term, the term is to be given its ordinary meaning at the time of enactment. *Perrin v. United States*, 444 U.S. 37, 42 (1979); *Gates v. Commissioner*, 135 T.C. 1, 6 (2010). And the canon against surplusage helps us determine that meaning.

Under the canon against surplusage, we give effect to every clause and word of a statute. *United States v. Menasche*, 348 U.S. 528, 538–39 (1955). "When construing a statute, the Court must interpret it 'so as to avoid rendering any part of the statute meaningless surplusage.'" *Growmark, Inc. & Subs. v. Commissioner*, No. 23797-14, 160 T.C., slip op. at 11 (May 16, 2023) (citing *15 W. 17th St. LLC v. Commissioner*, 147 T.C. 557, 586 (2016)); *see also Tucker v. Commissioner*, 135 T.C. 114, 154 (2010) ("[W]e decline to read words out of the statute; rather, we attempt to give meaning to every word that Congress enacted . . . ."), *aff'd*, 676 F.3d 1129 (D.C. Cir. 2012).

Turning to the statute in question, we find that the limited partner exception does not apply to a partner who is limited in name only. If Congress had intended that limited partners be automatically excluded, it could have simply said "limited partner." By adding "as such," Congress made clear that the limited partner exception applies only to a limited partner who is functioning as a limited partner.

Petitioner's reliance on legislative history to overcome the plain meaning of the statute is unavailing. To the extent legislative history might be used to shed light on the meaning of the phrase "limited partner, as such," it confirms our conclusion. Congress enacted section 1402(a)(13) to exclude earnings from a mere investment. It intended for the phrase "limited partners, as such" used in section 1402(a)(13) to refer to passive investors.

Petitioner points to H.R. Rep. No. 95-702, pt. 1, at 11, *as reprinted in* 1977 U.S.C.C.A.N. at 4168, as support, noting that it states that section 1402(a)(13) was intended "to exclude for coverage purposes certain earnings which are basically of an investment nature." But Congress's express text makes clear that it was looking to the nature of the earnings. Congress intended section 1402(a)(13) to apply to partners that are passive investors.

Next petitioner cites the Sense of the Senate Resolution for support. Through that resolution, the Senate expressed its view that Treasury's attempt to define limited partner exceeded its authority. But Treasury's proposed regulation had several criteria that might have led to a limited partner's earnings' being subject to self-employment tax, even if the person was a passive investor. One such example is merely being personally liable for partnership debts. Prop. Treas. Reg. § 1.1402(a)-2(h)(2)(i), 62 Fed. Reg. at 1704. The Senate's concern was "that an individual meeting any one of these three criteria will be treated as a general partner." H.R. 2014, 105th Cong., 143 Cong. Rec. S6694, S6774, S6819. The Senate's concern about the criteria set forth in Treasury's proposed regulation does not override the plain text of the statute.

Lastly, petitioner relies on a Joint Committee on Taxation report that states: "A special rule applies for limited partners of a partnership." Staff of J. Comm. on Tax'n, 110th Cong., Present Law and Analysis Relating to Tax Treatment of Partnership Carried Interests and Related Issues, Part I, JCX-62-07, at 35. In a footnote from that sentence, that report explains that "limited partner status is determined under State law." *Id.* at 35 n.64. We find this unpersuasive. The report addresses only the meaning of the words "limited partner" and not the phrase "limited partner, as such." It is those latter words that narrow the scope of the limited partner exception, which the Joint Committee Report does not address. To the extent one might read the Joint Committee on Taxation Report more broadly, it does not constitute legislative history and carries no more weight than a law review article. *Gregory*, 149 T.C. at 55.

Petitioner puts forth myriad other arguments to support its definition of limited partner, but none is persuasive. Petitioner cites section 469 and compares its rules and regulations with section 1402(a)(13), but we do not find the sections analogous. Petitioner cites dicta out of context.[10] Lastly, petitioner points to the 2016 Instructions for Form 1065 at 2 and 2017 Instructions for Form 1065 at 3 as support for its definition. The instructions state: "A limited partner is a partner in a partnership formed under a state limited partnership law, whose

---

[10] For example, petitioner cites *Duffy* as a case that "recognizes that section 1402(a)(13)'s exception applies to limited partners in a limited partnership." But *Duffy* merely recites the rule of section 1402(a)(13). It makes no determination as to the meaning of "limited partner, as such." *Duffy v. Commissioner*, T.C. Memo. 2020-108, at *50 n.16.

personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership." But this definition is provided as part of the "General Instructions" and "Definitions." This is not, and does not purport to be, a definition for purposes of self-employment tax. In discussion of self-employment tax, the instructions state: "Generally, a limited partner's share of partnership income (loss) isn't included in net earnings (loss) from self-employment." 2016 Instructions for Form 1065 at 34; 2017 Instructions for Form 1065 at 36. Use of the qualifier "generally" makes clear that it is not always true that a limited partner's share of partnership income is excluded from net earnings from self-employment.

III.    *Partnership Items*

Having concluded that we must examine the functions and roles of the limited partners in the partnership to determine whether their shares of earnings are excluded from net earnings from self-employment, we must address whether that examination must happen in these partnership-level proceedings or await a partner-level proceeding.

A.    *Jurisdiction*

Like other federal courts, the Tax Court is a court of limited jurisdiction and can exercise its jurisdiction only to the extent provided by Congress. I.R.C. § 7442. Furthermore, like other courts, we always have jurisdiction to determine whether we have jurisdiction. *See Meserve Drilling Partners, Reg'l Res., Inc. v. Commissioner*, T.C. Memo. 1996-72, 71 T.C.M. (CCH) 2146, 2147, *aff'd*, 152 F.3d 1181 (9th Cir. 1998). The Tax Court has jurisdiction over a TEFRA partnership-level proceeding when the tax matters partner or another eligible partner timely petitions the Court for a readjustment of partnership items. I.R.C. § 6226(a) and (b). And in such a proceeding, we generally have jurisdiction to redetermine partnership items. I.R.C. § 6226(f). Whether we may inquire into the substance of Mr. Mandelblatt's, Mr. Kapadia's, and Mr. Friedman's roles and activities at Soroban for the purpose of determining whether the limited partner exception of section 1402(a)(13) applies turns on the question of whether this determination is a partnership item.

B.     *The TEFRA Procedures*

The unified audit and litigation procedures were enacted as part of TEFRA. The TEFRA procedures provide a method for making adjustments at the partnership level. Specifically, section 6221 provides that "the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level."

The procedures for determining partnership items and affected items differ. Partnership items are those items that are more properly determined at the partnership level, whereas affected items are items that are affected by partnership items. I.R.C. § 6231(a)(3), (5). Generally, the Commissioner is precluded from assessing liabilities attributable to partnership items until after a partnership-level proceeding. I.R.C. § 6225(a); *Grigoraci v. Commissioner*, T.C. Memo. 2002-202, 84 T.C.M. (CCH) 186, 189. Adjustments to affected items that require a partner-level determination are made in a separate deficiency proceeding after the conclusion of the partnership-level proceeding. I.R.C. § 6230(a); *Grigoraci*, 84 T.C.M. (CCH) at 189; *see also N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 744–45 (1987) (finding adjustments to affected items dependent on factual determinations, other than a computation, are to be made in partner-level proceedings).

Section 6231(a)(3) defines a partnership item as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." Therefore, a partnership item is an item (1) that is required to be taken into account for the partnership's taxable year under subtitle A, and (2) that regulations provide is more appropriately determined at the partnership level. Treasury Regulation § 301.6231(a)(3)-1 provides a list of these items.

The first issue is easily resolved. Section 1402 is found in subtitle A. We have found that subtitle A requires a partnership to separately state "the amount of income that would be [net earnings from self-employment] in the hands of the ultimate recipients if those recipients were in fact individuals." *Olsen-Smith, Ltd. v. Commissioner*, T.C. Memo. 2005-174, 90 T.C.M (CCH) 64, 66; *see* I.R.C. §§ 1401 and 1402. More specifically, a partnership is required to determine the entity

status of its direct partners and "to report perfunctorily its ordinary income as [net earnings from self-employment] except to the extent that the ordinary income was allocated to a direct partner that was a limited partner." *Olsen-Smith*, 90 T.C.M (CCH) at 66. Therefore, the only issue we must consider is whether the disputed issue is an item that the Treasury regulation provides is an item more appropriately determined at the partnership level.

This question is easily resolved. Treasury Regulation § 301.6231(a)(3)-1 identifies items that are partnership items because they are more appropriately determined at the partnership level. Most relevant to the present inquiry is Treasury Regulation § 301.6231(a)(3)-1(b), which provides:

> (b) Factors that affect the determination of partnership items. The term "partnership item" includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc.

A functional inquiry into the roles and activities of Soroban's individual partners as required by section 1402(a)(13) involves factual determinations that are necessary to determine Soroban's aggregate amount of net earnings from self-employment. *See, e.g.*, *Gluck v. Commissioner*, T.C. Memo. 2020-66, at *14–15 (finding whether a partnership owned a building a legal and factual determination pursuant to Treasury Regulation § 301.6231(a)(3)-1(b) when that partnership is required to report its gross rents as income), *aff'd*, No. 21-867, 2022 WL 802766 (2d Cir. Mar. 17, 2022). Accordingly, the functional inquiry into their roles is a partnership item and appropriate for these proceedings.

IV.    *Conclusion*

The Court must apply a functional analysis test to determine whether a partner in a state law limited partnership is a "limited partner, as such" for purposes of section 1402(a)(13). For a partnership that is subject to TEFRA, the application of the functional analysis test is a partnership item that we have jurisdiction to determine in a TEFRA proceeding. Accordingly, we will deny petitioner's Motion for Summary Judgment and grant the Commissioner's Motion for Partial Summary Judgment.

To reflect the foregoing,

*An appropriate order will be issued.*